18394

SOUTH CAROLINA STATE HIGHWAY DEPARTMENT,
Appellant, v. J. D. ALLISON, Respondent

(143 S. E. (2d) 800)

*Messrs. Daniel R. McLeod, Attorney General* and *J. Mc-Nary Spigner, Assistant Attorney General,* of Columbia, and *Francis R. Fant,* of Anderson, *for Appellant,*

*E. Harry Agnew, Esq.,* of Anderson, *for Respondent,*

August 25, 1965.

Bussey, Justice.

In this highway condemnation case the South Carolina Highway Department appeals from a verdict and judgment in favor of the respondent landowner. The respondent owned a tract of land in Anderson County containing some forty acres which fronted to the east on what was known as the "Old Greenville Road." U. S. Highway No. 29 was constructed, some years ago, over the rear or western portion of the property. The instant condemnation proceeding was instituted in connection with the acquisition of a right of way for Highway I-85, a controlled-access facility, one lane of which is to be constructed on top of U. S. Highway No. 29. The landowner had access to Highway 29 along the entire western extremity of his property prior to the taking. After the taking, he will have identical access to a frontage road being constructed in conjunction with Highway I-85. By traveling seven-tenths of a mile south of his property on this frontage road, respondent can enter Highway I-85, as well as the rest of the general highway system. His access to the Old Greenville Road at the eastern extremity of his property is unaffected.

Appellant's sole exception raises the single question, stated in the record, as follows:

"It is stipulated that the question to be answered in this appeal is whether a landowner is entitled to compensation for the loss of access to an existing highway, when a controlled access facility is constructed on top of it, where a frontage road is provided along the entire extremity of the landowner's property."

We think that under these circumstances the landowner is entitled to compensation for the loss of such access, at least to the extent that such loss adversely affects the fair market value of the remainder of the landowner's property, not taken in the condemnation proceeding. The construction of a frontage road is in the nature of a benefit and, as the

trial judge charged the jury, such was a mitigating or offsetting factor to be considered in determining the amount of compensation to which the landowner was entitled.

Although not all states follow such rule, it is, we think, clearly established in this state that an abutting property owner has a right of access over a street adjacent to his property as an appurtenance thereto. And, that an obstruction that materially injures or deprives the abutting property owner of ingress or egress to and from his property is a "taking" of the property, for which recovery may be had. The fact that other means of access to the property are available affects merely the amount of damages, and not the right of recovery. *Sease v. City of Spartanburg,* 242 S. C. 520, 131 S. E. (2d) 683; *Brown v. Hendricks,* 211 S. C. 395, 45 S. E. (2d) 603; *City of Rock Hill v. Cothran,* 209 S. C. 357, 40 S. E. (2d) 239; *Houston v. Town of West Greenville,* 126 S. C. 484, 120 S. E. 236.

All of the cited cases were concerned with streets within a municipality as opposed to a highway outside of an urban area. We think, however, that the rule consistently followed by this court with respect to urban streets is just as soundly applicable, if not more so, to highways in rural areas.

None of these cases make reference to the ownership of the fee in and to the urban streets involved, but it is a matter, we think, of common knowledge that at least in some instances the municipalities, rather than the adjacent property owners, own the fee to the streets. Neither the history of U. S. Highway No. 29, nor the manner of the acquisition of the right of way therefor through the property of respondent appears in the record.

Nevertheless, as a general rule, the fee to the right of way of certainly most highways in this state remains in the abutting landowners. In the acquisition of highway rights of way, the benefits, if any, of the improvement are

taken into consideration in determining the amount of compensation to which the landowner is entitled. A new highway is normally of no benefit to the landowner over whose land the highway is constructed unless he has the right of access thereto, and, hence, the landowner's right of access thereto becomes, in effect, a property right for which the landowner has directly or indirectly paid a valuable consideration.

Aside from the decisions of this court, the legislature itself has clearly recognized, we think, the property right of an abutting landowner in and to access to a public street, highway or thoroughfare. The General Assembly of this state first provided for and authorized the construction of controlled-access highway facilities by the South Carolina Highway Department in the year 1956, the provisions of the 1956 Act being now incorporated in Article 4, Chapter 3 of Title 33 of the 1962 Code of Laws. Code Section 33-217 reads as follows:

"Acquistion of property for controlled-access facilities; rights of abutting owners.—The Department may acquire such lands and property, *including rights of access,* as may be needed for controlled-access facilities, by gift, devise, purchase or condemnation, in the same manner as now or hereafter authorized by law for acquiring property or property rights in connection with other State highways. Along new highway locations abutting property owners shall not be entitled, as a matter of right, to access to such new locations, and any denial of such rights of access shall not be deemed as grounds for special damages." (Emphasis added.)

We think the quoted Code section shows a clear recognition by the legislature of the property right of access existing in property owners whose lands abut the public highways of the state and an intent that such property owners should be compensated for such rights, in accordance with established principles. The last sentence of the section, of course, denies access to new locations of controlled-access facilities,

but with that provision of the statute we are not here concerned.

Code Section 33-219.1, also a part of the 1956 Act, ■ authorizes the Highway Department to change or close existing driveways, or side road entrances, and exits under certain circumstances and conditions.

Code Section 33-219.3 provides for judicial review of the Department's decisions thereabout and contains the following:

"Provided, however, that the above procedure shall be an alternative method of relief and shall in no wise abrogate or deny any property owners' rights as to relief under any existing law relating to the condemnation of property."

The quoted proviso, we think, again is a clear recognition by the legislature of the existence of a property right of access in and to the existing highways of the state, vested in the abutting property owners.

A number of jurisdictions have held that the state, ■ in the exercise of its police power, may deprive an abutting landowner of access to an existing highway, in the course of the construction of a controlled-access facility, without compensation, where the landowner is provided with a frontage road along the abutting property. The appellant earnestly urges that this court should adopt and follow that principle or rule. The decisions from other jurisdictions are, however, far from unanimous on the point.

Which rule a particular state adopts or follows is, of necessity, largely dependent upon a number of factors, including the constitutional and statutory provisions of the particular state and the prior case law of the jurisdiction. As above pointed out, not all jurisdictions are committed to the rule, as we are, that an abutting landowner has a property right of access to an existing street or highway. However sound the rule, which appellant would have us adopt and apply, may be in those jurisdictions which so hold, this court is not free to adopt the same in view of not only the

prior decisions of this court construing the Constitution of this state, but what we think was the clear intent of the legislature.

Much of appellant's argument is addressed to subsidiary, collateral and incidental questions which were neither raised below, passed upon by the lower court nor raised by any proper exception here, and for this reason we refrain from discussing the same.

The judgment of the lower court is, accordingly, affirmed.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.