440 P.2d 32

**STATE of Arizona ex rel. Justin HERMAN, Director Arizona Highway Department, Appellant,**

v.

**Charles H. JACOBS and Loretta Jacobs, husband and wife, as joint tenants with right of survivorship, Appellees.**

**No. I CA–CIV 371.**

Court of Appeals of Arizona.

April 24, 1968.

Rehearing Denied May 24, 1968.

Review Denied July 12, 1968.

Darrell F. Smith, Atty. Gen., by Guy Axline, Sp. Asst. Atty. Gen., for appellant.

Earl Platt, St. Johns, for appellees.

STEVENS, Judge.

The State (appellant), instituted this action to condemn any right of direct access between Jacobs' (appellees) lands and the main traveled portions of Interstate 40, a new highway constructed upon the old right-of-way. The matter went to trial before a jury to determine the amount of damage, if any, sustained by appellees by reason of their loss or impairment of access to Interstate 40.

Two maps have been inserted in this opinion to illustrate the fact situation which is as follows: On 9 February 1964, the date of issuance of summons in this action, the appellees owned approximately 150 acres of land. 767 feet of this land abutted the northwesterly side of U. S. Highway 66, approximately 2 miles west of Chambers, Arizona, and approximately 9 miles east of Navajo, Arizona. On their frontage property, the appellees conducted a roadside

Before Situation

After Situation

business consisting primarily of the sale of petrified wood. On the upper part of their land, the appellees maintained their residence and several other buildings rented to their business employees.

Before this action was commenced, the appellees had access to their abutting lands by way of Highway 66. The public, whether traveling easterly or westerly, was free to turn directly off Highway 66 to the appellees' roadside business. After construction, the paved portion of Highway 66 became the westbound lane of Interstate 40, a four-lane controlled access, divided highway, and the eastbound lane was constructed over new right-of-way purchased from other persons alongside of Highway 66, opposite the appellees' land. A fence to control access to the through-lanes of Interstate 40 was erected inside the former right-of-way of Highway 66, fifty-eight feet south of and parallel to the south boundary of the appellees' property. Inside this fifty-eight foot portion of the highway, a paved, two-way frontage road was constructed which provided access to the through-lanes of Interstate 40 at McCarrell Interchange 7,300 feet west of the appellees' property. This frontage road is not a through frontage road. It ends at the east side of what was formerly appellees' highway frontage. The State has taken no actual property of the appellees but has rather cutoff the appellees direct access of ingress and egress to Interstate 40 from their abutting property.

During the trial, testimony was given as to the value of the appellees' property, including the improvements thereon, both before and after the impairment of the right to ingress and egress. The appellees' appraiser, Gene R. Brownell, testified that appellees' property, as enhanced by the improvements thereon, had a fair market value, before the condemnation of appellees' easement of ingress and egress to their property, in the sum of $47,160. His figures were based on a highest and best use of 2¾ acres as commercial frontage area, the highest and best use of the remainder being for grazing purposes. He further testified

that the highest and best use of the land after the condemnation was strictly for grazing purposes and that the value of the property after the condemnation was $15,592. In his opinion, the just compensation due appellees was the difference in before and after value which amounted to $31,568.

Appellant's appraiser, Billy Gene Neal, stated that the fair market value of appellees' property in the before situation, as enhanced by the improvements thereon, was $43,100. He testified that this figure was based on a highest and best use of three acres as commercial property, the remainder having a highest and best use as land for investment purposes. His estimate of fair market value as to the after situation was $26,700 leaving a decrease in value as between the before and after situation of $16,400. His opinion of highest and best use in the after situation was that all of the land was best suited for use as strictly investment land.

One of the appellees, Charles Jacobs, testified as an owner that in his opinion the fair market value, as enhanced by improvements thereon, before the taking was $53,714, and that its after value was $14,864, giving a just compensation figure of $38,850. He had valued the property in the before situation as five acres for commercial purposes, five acres for residential purposes, and the remainder as grazing land. He valued the property in the after situation as strictly grazing land.

On this evidence, the jury determined that the appellees had sustained damages in the amount of $21,000.

■ The State contends that the appellees were not entitled to compensation in any amount because there was no actual physical invasion of the appellees' property. In support of this contention, the State cites Rutledge v. State, 100 Ariz. 174, 412 P.2d 467 (1966). We deem it necessary to dispose of this contention first for if the State is correct, then there will be no necessity to proceed further.

There is language in the Rutledge case which when taken out of context, would seem to support the contention of the State. However, in Rutledge the court was primarily concerned with interpretation of a statute of limitations and held that the cause of action in that case was barred by a two-year statute of limitations. The fact situation in the present case sufficiently distinguishes it from Rutledge and makes Rutledge inapplicable.

We deem the present case to be controlled by the principles set forth in State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P. 2d 988 (1960), and State v. Wilson, Ariz., 438 P.2d 760, (filed 13 March 1968).

In Thelberg, our Supreme Court stated at page 324 of 87 Ariz., page 991 of 350 P.2d:

> "An examination of many authorities from various jurisdictions convinces us that the weight of authority in the United States is to the effect that either the destruction or the material impairment of the access easement of an abutting property owner to such highway is compensable. * * * It follows that the State can neither take nor damage said easement of ingress or egress of an abutting property owner without just compensation."

In the Wilson case, our Supreme Court defined the right of access as follows:

> "Access may be defined as the right vested in the owner of land which adjoins a road or other highway to go and return from his own land to the road or highway without obstruction. (citing case) Such a right, to be of any substantial utility, must necessarily include the owner's invitees and licensees."

In both Thelberg and Wilson there was an actual physical taking of property. However, we do not deem this difference in facts between those cases and the case with which we are presently concerned to be a material difference. In the present case, there has been an obstruction of the appellees' right of direct access to Interstate 40 and they have been relegated to a circuitous route which has materially impaired their right of access to the highway. We do not believe

that our Supreme Court meant, by the decision in Rutledge, to make the right to damages for loss of access wholly contingent on the fortuity that there be an actual physical taking of property, no matter how large or small in amount. In the case with which we are presently concerned, the loss to the property owners by taking their right to direct access is not mitigated in the least by the fact that there was no physical taking of any of their tangible fee property. For the reasons stated above, we hold that there has been a compensable taking of a property right in the situation now before us.

In Thelberg, our Supreme Court stated at page 325 of 87 Ariz., page 992 of 350 P. 2d:

> "When the controlled-access highway is constructed upon the right of way of the conventional highway and the owner's ingress and egress to abutting property has been destroyed or substantially impaired, he may recover damages therefor. * * * Other means of access such as frontage roads as in the instant case may be taken into consideration in determining the amount which would be just under the circumstances. (citing case) Other means of access may mitigate damages, (citing case) but does not constitute a defense to the action however. (citing case)

> "The measure of damages for the destruction or impairment of access to the highway upon which the property of an owner abuts is the difference between the market value of the abutting property immediately before and immediately after the destruction or impairment thereof. The damages awarded the abutting landowner for destruction or impairment of access therefore is based, not upon the value of the right of access to the highway, but rather upon the difference in the value of the remaining property before and after the access thereto has been destroyed or impaired. This in turn is based upon the highest and best use to which the land involved is best suited before and after the right of access is molested."

■ These rules were applied in the instant case. Both appraisers and the appellee testified as to the before and after value of the property basing their figures upon their opinions as to highest and best use in the before and after situations. However, the State contends that the appellees took into consideration noncompensable items in their valuations, namely, loss of traffic flow and loss of business income. We note that there was no direct evidence offered by the appellees as to loss of traffic flow or as to loss of business income. Similar contentions were raised in Wilson and were answered as follows:

"While it is to be acknowledged that an abutting owner does not have the right to insist that traffic pass over the highway in front of his property undiverted and and unobstructed, (citing case) this does *not mean that if traffic is using the* highway an abutting property owner may not profit from its flow. And if travelers who were formerly attracted to the Triangle T Ranch do not now find their way onto the property because of the lack of direct access, manifestly it is the destruction of the access which has reduced the business profits and, therefore, the valuation as a commercial property. * * * So, while the State is under no duty or obligation to send traffic past appellees' property, as long as the traffic does pass, the appellees are entitled to avail themselves of it in common with other abutting owners. The trial court did not err in permitting the jury to consider the amount of traffic flow as support for the expert appraisers' opinions that the value of the property was diminished through loss of accessibility to such flow.

"The appellant complains that the court erred in permitting the jury to consider loss of business as an item of damage. While we have said that evidence of business earnings is ordinarily improper in condemnation actions, (citing case) it is not every loss of business which is impermissible, (citing case). Irrespective, we do not understand that Mrs. Wilson's testimony was offered to prove the amount of appellees' damages but to establish that appellees were damaged. Her testimony established that the access rights were valuable and led to the inference that there was a diminution in the highest and best use of the property occasioned by the impairment of access. From such a loss the jury could conclude that the expert's opinion of a reduction in the market value was reasonably supported by facts."

■ In Wilson, the trial court instructed the jury that it was not to consider any claim for loss or impairment of business. In the case with which we are presently concerned, such an instruction was requested but was refused by the trial court. Under the circumstances we do not consider this refusal to be reversible error. We agree with the appellee that the record reveals that none of the witnesses actually considered or calculated any damages for loss of business, but rather merely downgraded the improvements to their value in the after situation. Consequently, there was no evidence before the trial court on which to base the giving of the requested instruction.

■ The State further claims that it was error for the trial court to refuse to give the State's requested instruction which provided that the presence of the frontage road could be used to mitigate damages. As has been pointed out above, the Thelberg case would support the giving of such an instruction. However, we hold that there was no error in refusing the instruction for two reasons. First, no evidence was given as to any specific amount that the jury could use in determining mitigation. It would have required pure conjecture on the part of the jury. Second, the before and after valuations of the property reflect each witness's opinion as to the value of the frontage road. In other words, the value of the frontage road was taken into consideration in determining the highest and best use of the property in the after situation. Under

these circumstances, it was not error to refuse the instruction.

■ The judgment in the present case was entered on 18 January 1966. On the same date the appellees, without notice to the State, made an "APPLICATION FOR ORDER RELEASING FUNDS HELD PURSUANT TO ORDER FOR IMMEDIATE POSSESSION", and on the same date the court entered its "ORDER DIRECTING CLERK TO RELEASE FUNDS PAID INTO COURT ON ORDER FOR POSSESSION". On 25 January 1966, the State filed a "MOTION FOR NEW TRIAL", "MOTION FOR STAY OF JUDGMENT PENDING DETERMINATION OF MOTION FOR NEW TRIAL", and "MOTION FOR ORDER QUASHING ORDER DIRECTING CLERK TO RELEASE FUNDS PAID INTO COURT ON ORDER FOR POSSESSION, AND FOR ORDER DIRECTING DEFENDANTS TO REPAY INTO COURT ALL SUMS RECEIVED PURSUANT TO SAID ORDER". All of these motions were denied by the trial court. The State contends that under the provisions of A.R.S. §§ 12–1127, subsec. A and 12–1127, subsec. B, the appellees were not entitled to have and receive money paid into court for their benefit until 10 days after judgment had been entered. In support of its position the State further contends that the appellees should not have been permitted to have their judgment satisfied if the State proceeded with a motion for new trial or an appeal which could result in a reversal of the judgment. With these contentions we do not agree.

A.R.S. § 12–1127 provides in pertinent part:

"§ 12–1127. Possession by plaintiff after judgment or pending appeal; receipt of payment as abandonment; custody of money paid into court; costs of new trial

"A. At any time after judgment is entered, or pending an appeal from the judgment to the supreme court, when plaintiff has paid into court for defendant or defendants the full amount of the judgment, and such other amounts as required by the court as a fund to pay further damages and costs which may be recovered in the proceedings, as well as all damages that may be sustained by defendant or defendants if for any cause the property is not finally taken for public use, the superior court in which the action was tried may, upon notice of not less than ten days, authorize plaintiff, if already in possession, to continue therein, or if not, then to take possession of and use the property until final conclusion of the litigation, and may, if necessary, stay all actions and proceedings against plaintiff on account thereof.

"B. The defendant or defendants who are entitled to the money paid into court upon any judgment may demand and receive the money at any time thereafter upon an order of the court. The court shall, upon application, order the money so paid into court delivered to the party entitled thereto upon his filing either a satisfaction of the judgment or a receipt for the money, and an abandonment of all defenses to the action or proceeding except as to the amount of damages to which he may be entitled if a new trial is granted. Such payment shall be deemed an abandonment of all defenses, except the party's claim for greater compensation."

\*  \*  \*  \*  \*  \*

The appellees complied with the provisions of Subsection B and the funds were released to them. The State would have us read the 10 day notice provision of Subsection A into Subsection B. However, from the language used in the statute, it is clear that the 10 day notice provision does not apply to Subsection B. Furthermore, a review of the case law interpretation of this statute reveals that it was incumbent upon the trial judge to release the funds upon compliance with the statute by the appellees. In Fisher v. District Court, 4 Ariz. 254, 36 P. 176 (1894), the territorial appellate court construed Section 18 of the Eminent Do-

main Act which was substantially identical to A.R.S. §§ 12–1127, subsec. A and 12–1127, subsec. B. In that case, the court stated that it was "mandatory upon the court to order the payment of the money" to the condemnee when application was made therefor and it was error for the trial court to order the money held pending an appeal by the State. The Fisher case was later approved by our State Supreme Court in State ex rel. Morrison v. Jay Six Cattle Company, 85 Ariz. 220, 335 P.2d 799 (1959). We hold that the procedure followed by the trial court was entirely proper. We have not been called upon to give consideration to whether the State could have invoked Rule 62(b) of the Rules of Civil Procedure, 16 A.R.S. relating to temporary stays pending a motion for new trial or to the applicability of Rule 73(k) relating to supersedeas bonds.

Judgment affirmed.

CAMERON, C. J., and DONOFRIO, J., concur.