GLENN R. HAYMORE AND WIFE, REVA S. HAYMORE, AND JOE C. HAYMORE AND WIFE, CLEO B. HAYMORE v. NORTH CAROLINA STATE HIGHWAY COMMISSION

No. 7217SC207

(Filed 28 June 1972)

1. **Eminent Domain § 2— access to highway — service road**

   A landowner is entitled to no compensation for the restriction of access where he is provided with a freely accessible service road connecting with the highway on which his property formerly abutted.

2. **Eminent Domain § 2— access to highway — service road**

   Landowners suffered no compensable loss of access to a highway where they have been provided a fully accessible service road which runs the length of their property, and northbound travelers are required to travel a distance of .76 miles and southbound travelers a distance of .83 miles to reach their property.

3. **Eminent Domain § 2— denial of access — service road — connection with existing road**

   There is no merit in landowners' contention that they have been deprived of reasonable access to a highway because the service road does not connect directly with a ramp leading onto the highway, but connects with an existing road, which in turn leads onto the highway.

**4. Eminent Domain § 2— right of access**

While an abutting landowner's entire access to a highway may not be cut off, such landowner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway.

**5. Eminent Domain § 2— right of access — reasonable means of ingress and egress**

When the State interferes with the access of a property owner, the question is always whether a reasonable means of ingress and egress remains or is provided.

**6. Eminent Domain § 2— driveway permit — regulatory action**

The granting of a driveway permit does not vest an irrevocable property right in the landowner which may not thereafter be taken without compensation, since the granting of a driveway permit is not a contract but is a regulatory action taken by the State for the purpose of assuring that a proposed driveway will be constructed in a safe manner and so as not to endanger travel upon the highway. G.S. 136-18(5).

**7. Eminent Domain § 2— right-of-way agreement — access at particular point**

Compensation must be paid where under a right-of-way agreement the owner retains the right of access at a particular point and is subsequently refused access at that point.

**8. Eminent Domain § 2; Highways and Cartways § 7— construction of highway — damage to abutting land — stipulation**

Trial court's refusal to find that plaintiffs' property was permanently damaged during construction of a highway was supported by a stipulation that the highway project was constructed "entirely within the previously existing right of way belonging to the State Highway Commission."

**9. Eminent Domain § 6— change in access — loss of profits — irrelevancy**

Where the only issue in a reverse condemnation proceeding was whether there had been an actual taking of plaintiffs' right of access, evidence of whether a change in the access afforded plaintiffs to the highway had caused a loss of profits was not relevant.

**10. Eminent Domain § 6— comparison of profits — remoteness**

Where plaintiffs in a reverse condemnation proceeding sought to compare profits made seven years before a highway project was started with profits made after the project was completed, the remoteness in time of the comparison dates rendered the evidence of no probative value.

APPEAL by plaintiffs from *Seay, Judge,* 29 March 1971 Session of Superior Court held in SURRY County.

Reverse condemnation action in which plaintiffs allege their right of access to Highway 52 was taken by defendant without just compensation. G.S. 136-89.53.

Between 26 November 1968 and 27 November 1970, U.S. Highway 52 in Surry County was converted from a two-lane noncontrolled access highway to a four-lane controlled access facility. Plaintiffs own a three-acre tract of land abutting the highway right-of-way on the east. A restaurant, service station with truckers' facilities, and a storage warehouse are located on plaintiffs' property. Before the conversion project, plaintiffs had direct access onto the highway. After the project, their direct access to the highway was denied; however, they were afforded access onto a service road which was constructed as a part of the project.

The service road is a 20-foot wide asphalt two-way road which runs along the entire frontage of plaintiffs' property and dead ends approximatetly 1,000 feet to the southeast thereof. It intersects with Holly Springs Road a short distance north of plaintiffs' property. Holly Springs Road crosses Highway 52. An interchange system at this point provides free access to both the northbound and southbound lanes of the highway.

In order to reach plaintiffs' property, traffic traveling north along Highway 52 must now exit at the interchange and travel a total distance of .76 miles along the exit ramp, Holly Springs Road and the service road. Traffic going in a southerly direction must travel .83 miles. Egress from plaintiffs' property onto Highway 52 is along similar routes and the distance is approximately the same.

After hearing the evidence of plaintiffs and defendant, the court made findings of fact and concluded that the service road provides plaintiffs' property with reasonable access to the through lanes of travel for U. S. Highway 52 and that there has been no compensable taking of plaintiffs' property. Judgment was entered dismissing the case and plaintiffs appealed.

*White, Crumpler and Pfefferkorn by James G. White for plaintiff appellants.*

*Attorney General Morgan by Assistant Attorney General Cole for defendant appellee.*

GRAHAM, Judge.

The principal question raised in this appeal is whether the court erred in determining that the service road now furnishes plaintiffs with reasonable access to Highway 52. We hold that there was no error.

"The question of what constitutes a taking of a landowner's right to access has been the subject of numerous decisions in this jurisdiction, all to the effect that while a substantial or unreasonable interference with an abutting landowner's access constitutes the taking of a property right, the restriction of his right of entrance to reasonable and proper points so as to protect others who may be using the highway does not constitute a taking. Such reasonable restriction is within the police power of the sovereign and any resulting inconvenience is *damnum absque injuria.*" *Highway Comm. v. Yarborough,* 6 N.C. App. 294, 301, 170 S.E. 2d 159, 164, and cases cited.

[1]  It has been held repeatedly in this State that a landowner is entitled to no compensation for the restriction of access where he is provided with a freely accessible service road connecting with the highway on which his property formerly abutted. *Highway Commission v. Nuckles,* 271 N.C. 1, 155 S.E. 2d 772; *Moses v. Highway Commission,* 261 N.C. 316, 134 S.E. 2d 664; *Highway Comm. v. Rankin,* 2 N.C. App. 452, 163 S.E. 2d 302.

[2]  Plaintiffs insist that even though they have been provided a fully accessible service road which runs the length of their property, their access to the highway has nevertheless been unreasonably diminished because of the substantial distance of travel now required to reach Highway 52. We answer this simply by noting that the distance here involved, and the inconvenience to plaintiffs, is no greater than that present in various cases in which the Supreme Court has held that the property owner was afforded reasonable access. See for example, *Highway Commission v. Nuckles, supra; Moses v. Highway Commission, supra.*

[3]  Plaintiffs also contend they have been deprived of reasonable access because the service road does not connect directly with a ramp leading onto Highway 52, but connects with an existing road, Holly Springs Road, which in turn leads onto the interchange. We find this of little significance. There is

a distance of only 600 feet from the point where the nearest ramp enters Holly Springs Road to the point where the service road enters Holly Springs Road. Sound engineering practice undoubtedly required that a reasonable distance separate the nearest ramp and the service road. Otherwise, traffic moving in a northerly direction along the ramp and onto the service road would be required to make an immediate 180 degree turn in order to enter the service road. This type of maneuver would be dangerous and inconvenient, if not altogether impossible.

[4, 5] A right-of-way agreement for the construction of a portion of Highway 52 was acquired from plaintiffs in 1953. Plaintiffs argue that since no access rights were conveyed by them in the agreement, they retained these rights. We agree. Had plaintiffs surrendered all right of access under the agreement, defendant would have been under no obligation to construct the service road or otherwise arrange for plaintiffs' access to Highway 52 when it was converted to a controlled access facility. The point is that while entire access may not be cut off, an abutting landowner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway. *Barnes v. Highway Commission*, 257 N.C. 507, 126 S.E. 2d 732. When the State interferes with the access of a property owner the question is always whether reasonable means of ingress and egress remains or is provided. *Highway Comm. v. Yarborough, supra.* This question has been resolved against plaintiffs by findings of fact which are supported by the evidence.

[6] Plaintiffs point out that before Highway 52 was upgraded, defendant issued several permits for driveways to be constructed onto plaintiffs' property. Plaintiffs argue that these permits granted easements of entry which could not thereafter be taken without compensation.

The State Highway Commission has authority under G.S. 136-18(5) to make rules, regulations and ordinances for the use of, and to police traffic on, the State highways. Pursuant to this authority, the Commission requires driveway permits for the purpose of assuring that a proposed driveway will be constructed in a safe manner and so as not to endanger travel upon the highway. This is an exercise of the general police power, and the granting of the permit does not vest an irrevocable property right in the property owner.

[7]  It is true that compensation must be paid where under a right-of-way agreement the owner retains the right of access at a particular point and is subsequently refused access at that point. *Petroleum Marketers v. Highway Commission*, 269 N.C. 411, 152 S.E. 2d 508; *Kirkman v. Highway Commission*, 257 N.C. 428, 126 S.E. 2d 107; *Williams v. Highway Commission*, 252 N.C. 772, 114 S.E. 2d 782; *Realty Co. v. Highway Comm.*, 1 N.C. App. 82, 160 S.E. 2d 83. In such instances, the right of continuing access at a particular point is a property right acknowledged by the State as a part of the consideration for the right-of-way agreement. The granting of an application for a driveway permit is not a contract. It is a regulatory action taken by the State for safety purposes and cannot be compared with a right-of-way agreement in which the property owner reserves access at a particular point.

[8]  Plaintiffs say that the court erred in failing to find that their property was permanently and temporarily damaged during construction. The parties stipulated that the project was constructed "entirely within the previously existing right of way belonging to the State Highway Commission. . . . " This stipulation supports the court's refusal to find that any permanent damages accrued to plaintiffs' property. There was testimony tending to indicate some minimal and temporary entry by defendant onto plaintiffs' property during construction. However, the court obviously rejected this testimony, which it was entitled to do.

[9, 10]  Finally, plaintiffs assign as error the court's refusal to allow testimony tending to show that the volume of sales from businesses located on plaintiffs' property was greater in 1961 than in 1970. No evidence was tendered concerning sales in the intervening years. A loss of profits may be a proper item to be considered in determining whether a taking of property for eminent domain has diminished the value of the land remaining. *Kirkman v. Highway Commission, supra*. The question of damages was not before the court here, however. The issue was whether there had been an actual taking. Therefore, whether a change in the access afforded plaintiffs to Highway 52 has caused a loss of profits was not relevant. Moreover, the evidence as tendered would have been inadmissible even if an issue of damages had been before the court. Plaintiffs sought to compare profits made seven years before the highway project

was started with profits made after the project was completed. The remoteness in time of the comparison dates rendered the evidence of no probative value.

Affirmed.

Judges MORRIS and VAUGHN concur.