TRIANGLE, INC., Appellant,

v.

STATE of Alaska, Appellee.

No. 4811.

Supreme Court of Alaska.

Sept. 4, 1981.

John W. Colver, Warren C. Colver & Associates, Anchorage, for appellant.

William R. Satterberg, Jr., Asst. Atty. Gen., Fairbanks, Richard Kerns, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

This is an appeal from an eminent domain action. The principal issue raised is whether a lessee of real property is entitled to compensation for the state's elimination of direct access from the property to an abutting highway. Other issues raised on appeal include the proper measure of compensation for a lessee whose property is partially condemned when the lessee holds options to renew its lease, and the proper measure for attorney's fees, costs and prejudgment interest in eminent domain actions.

As part of a project to widen and upgrade the Steese Highway in Fairbanks, Alaska, the state filed a complaint to condemn .079 acres of land abutting the highway, as well as any and all rights of direct access from the land to the highway. J & B, Inc., owner of the land, had leased its property to Triangle, Inc., appellant in this action.[1] In November of 1974, the state filed a Declaration of Taking and deposited $950.00 as just compensation for the land. J & B, Inc. entered into a Stipulation of Settlement with the state and, thus, the trial of this action concerned only Triangle's interests in the property.

Upon motion for partial summary judgment by the state, the superior court ruled that Triangle was not entitled to any compensation for the elimination of its direct access to the Steese Highway. After a jury trial, the court entered judgment for Triangle in the sum of $1,679.21 as compensation for the taking of the .079 acres.[2] Triangle was awarded partial attorney's fees and costs, as well as pre-judgment interest at the rate of six percent per annum.

On appeal, Triangle seeks to establish its right to compensation for the elimination of its direct access to the Steese Highway. The property it leases from J & B, Inc. is bounded on one side by the Steese Highway and on the other by Farmer's Loop Road. Before the state's project, Steese Highway was undivided. A driveway located on the property and used since 1962 provided direct access to both the highway and Farmer's Loop Road. Farmer's Loop Road connected with the highway approximately two-tenths of a mile south of the property.

---

1. Triangle, Inc. had operated a nightclub, known as the Club Rendezvous, on the property until May of 1974, when the nightclub was destroyed by a fire. The state's condemnation action was not initiated until June of 1974, at which time there were no buildings on the property. After being informed by the state of the nature of the project to improve the Steese Highway, Triangle reconstructed its nightclub on the property.

2. The jury was instructed to first determine the entire value of the property taken and then apportion the award between J & B, Inc. and Triangle on the basis of their respective interests. The total award was for $2,099.01.

After the project was completed, the Steese Highway was a divided, controlled-access highway. Farmer's Loop Road ended in a cul-de-sac where it had previously intersected the highway. In lieu of that intersection, a connector road between Farmer's Loop Road and the highway was constructed three-tenths of a mile north of the property. Thus, to travel from the Steese Highway to Triangle's business, customers must now enter the new connector road, proceed west two-tenths of a mile, turn left onto Famer's Loop Road and proceed south three-tenths of a mile and then turn into Triangle's driveway. The net increase in travel distance to the highway is approximately one-half of a mile.

## I.

### ELIMINATION OF DIRECT ACCESS

■ The first issue we address is whether the increased and circuitous route from Triangle's property to the Steese Highway resulting from the state's project is so unreasonable as to constitute a taking or damaging of Triangle's property rights for which compensation must be paid.[3] All jurisdictions recognize that an owner of abutting land has a right of access to and from a public street or highway.[4] In Alaska, this incident of ownership is limited to a "right of *reasonable* access." *B&G Meats, Inc. v. State*, 601 P.2d 252, 254 (Alaska 1979) (emphasis added). This rule is in accord with that adopted by a majority of jurisdictions. Annot., 42 A.L.R.3d 13, 30–48 (1972) ("Abutting Owner's Right to Damages for Limitation of Access Caused by Conversion of Conventional Road into Limited Access Highway").

In *B&G Meats*, we set forth the principles controlling a claim of taking caused by a change in access to streets or highways:

"No hard and fast rule can be stated, but courts must weigh the relative interests of the public and the individual and strike a just balance so that government will not be unduly restricted in its function for the public safety, while at the same time, give due effect to the policy of eminent domain to insure the individual against an *unreasonable* loss occasioned by the exercise of the police power. The question depends upon the particular facts of the case. Obviously, if there is a total blocking of access, the restriction would be unreasonable and the abutter entitled to compensation. Where, however, the restriction does not *substantially interfere* with the abutter's ingress and egress or where 'frontage' or 'outer roadways' reasonably provide access the abutter is not entitled to compensation. While an abutter has the right of access to the public highway system, it does not follow that he has a direct-access right to the main traveled portion thereof; circuity of travel, so long as it is not unreasonable, is non-compensable. Likewise, loss of business occasioned by the diversion of traffic is non-compensable."

601 P.2d at 254, *quoting Ray v. State Highway Commission*, 196 Kan. 13, 410 P.2d 278, 288–89 (1966) (concurring opinion of Fatzer, J.) (citations omitted) (emphasis in original).

The state and Triangle refer us to a multitude of decisions from other jurisdictions,[5] but none add to this rule or persuade us that it requires alteration. In accordance with our opinion in *B&G Meats*, we hold that Triangle never possessed a right of *direct* access to the Steese Highway; its only right was to reasonable access. Thus, our focus is limited to the narrow issue of whether the superior court erred when it decided that Triangle's remaining access is, as a matter of law, reasonable.

■ Triangle urges that the reasonableness of the remaining access is a question of

---

**3.** Art. I, § 18, of the Alaska Constitution states: *Eminent Domain.* Private property shall not be taken or damaged for public use without just compensation.

**4.** Annot., 42 A.L.R.3d 13 (1972) ("Abutting Owner's Right to Damages for Limitation of Access Caused by Conversion of Conventional Road into Limited-Access Highway").

**5.** These decisions are collected in Annot., 42 A.L.R.3d 13–138 (1972), referred to in note 4 *supra*.

fact for the jury and thus the superior court erred in granting summary judgment on the issue. Although there is a jurisdictional split on this issue,[6] we have implicitly decided in previous opinions that it is for the trial court to determine whether the case before it presents a compensable claim for loss of access or merely a claim for traffic diversion, which is non-compensable. *See B&G Meats, Inc. v. State*, 601 P.2d 252 (Alaska 1979); *Alsop v. State*, 586 P.2d 1236 (Alaska 1978); *Wernberg v. State*, 516 P.2d 1191 (Alaska 1973). In the first two of these cases, we affirmed determinations by the superior court that, as a matter of law, the property owners had not presented compensable claims for loss of access. *B&G Meats*, 601 P.2d at 255; *Alsop v. State*, 586 P.2d at 1240–41. In *Wernberg v. State*, 516 P.2d at 1201, we decided, as a matter of law, that the owner had stated a valid claim for relief.

■ It is only when a trial court concludes that the landowner has presented a valid claim that the case is submitted to the jury for a determination of the extent of the taking and the amount of compensation that must be paid by the state. *E. g., People v. Becker*, 262 Cal.App.2d 634, 69 Cal.Rptr. 110, 113 (1968); *People v. Presley*, 239 Cal.App.2d 309, 48 Cal.Rptr. 672, 674 (1966); *People v. Ricciardi*, 23 Cal.3d 390, 144 P.2d 799, 805 (1943); *State ex rel. Department of Highways v. Linnecke*, 86 Nev. 257, 468 P.2d 8, 10 (1970); *Stefan Auto Body v. State Highway Commission*, 21 Wis.2d 363, 124 N.W.2d 319, 321–22 (1963). *See Wernberg v. State*, 516 P.2d 1911 (Alaska 1973).

The dissent to this opinion proposes that an abutting landowner whose property is partially taken should be permitted to claim damages for loss of access even though the remaining access is not unreasonably circuitous. Our opinion in *Alsop v. State*, 586 P.2d 1236 (Alaska 1978) did not avert to the reasonable access limitation on the right to recover damages and it therefore is not persuasive authority for the proposition that such a limitation only applies when an owner has suffered a partial physical taking of his land. In accordance with the majority of those who have considered the matter,[7] we reject the dissent's proposition because we believe that it would, as the Colorado Supreme Court stated, "create serious problems of fairness to landowners similarly situated." *State Department of Highways v. Davis*, 626 P.2d 661, 665 (Colo.1981). If Triangle had a neighbor who also lost direct access to the highway because of the state's project, but this loss occurred without any physical taking of land, the dissent's proposal would permit compensation for Triangle but not for the neighbor, even though both suffered the same loss and both were left with the same reasonable, alternate access to the highway. In *State ex rel. State Highway Commission v. Danfelser*, 72 N.M. 361, 384 P.2d 241 (1963), *cert. denied*, 375 U.S. 969, 84 S.Ct. 487, 11 L.Ed.2d 416 (1964), the Supreme Court of New Mexico addressed this situation, stating:

> [I]f the right of access is a property right, its loss will be just as severe and should be compensable, whether a portion of the condemnee's land is taken or not. . . .

> . . . . .

> We take the position that abutters (the defendants in this case) have a right of access to the public roads system but it does not necessarily follow that they have a right of direct access to the main-traveled portions thereof. Circuity of travel, as long as it is not unreasonable, and any supposed loss in land value by reason of the diversion of express traffic, are non-compensable.

348 P.2d at 244, 246.

■ We conclude that the superior court did not err in granting partial sum-

---

6. Annot., 42 A.L.R.3d 13, 71–75 (1972).

7. As one commentator noted:

> It has been suggested that an abutting landowner is entitled to compensation for limitation of access due to the conversion of a conventional highway into a limited-access highway only where a part of his land is taken in order to construct or reconstruct the new limited-access facility. However, this view is generally repudiated by law review writers as well as courts.

Annot., 42 A.L.R.3d 13, 81 (1972) (footnotes omitted).

mary judgment for the state because we agree that the access remaining to Triangle after the state's improvements to the Steese Highway is reasonable. The additional distance of one-half of a mile that potential customers must travel to gain access to Triangle's business establishment is not so unreasonable as to constitute a taking.[8] As we stated in *B&G Meats,*

> A distinction must be made between loss of access and loss of traffic flow. The latter is not a part of the owner's [or lessee's] interest in his property. Restrictions which merely result in a diversion of traffic away from the property are thus not compensable.

601 P.2d at 254–55 (footnote omitted). We do not hold, or intend to imply, that an owner's or lessee's access to public roads must be totally blocked before the loss of access is compensable; we only hold that under the facts of this case the remaining access was sufficiently reasonable to avoid any need for payment of compensation.[9]

## II.

### OPTIONS TO RENEW

We next consider Triangle's argument that the superior court erred when it informed the jury that, for purposes of determining Triangle's share of compensation for the state's taking of the .079 acres, only 11.4 years remained of Triangle's leasehold. The original lease was for a term of five years, which ended in 1970. J & B, Inc. had given Triangle an option for five renewals, the first of which was for a period of fifteen years. Triangle had exercised the option, and at the time of the state's taking, 11.4 years remained of the fifteen-year period. The other four renewals were for periods of ten years each.

Triangle argues that these renewal periods should be included in its leasehold so that, when determining its share of compensation for the taking, a 51.4 year leasehold should be used. Assuming Triangle is correct, under the particular facts of this case, the court's error was harmless. The jury determined that the value of the .079 acres taken was $2,099.01. The jury then decided that Triangle was entitled to $1,679.21 or 80% of the $2,099.01. Triangle's claim is that, but for the court's ruling that Triangle's interest is limited to 11.4 years, the jury may have awarded Triangle a greater share of the $2,099.01.

At trial, an appraiser testifying for Triangle stated that if the leasehold were computed to be for a period of 51.4 years, J & B, Inc.'s share of the compensation should be 19% of the value of the taken property. Triangle's share would then be 81%. The appraiser further testified that if the lease were computed to continue for only 11.4 years, J & B, Inc.'s share should be 54%. Thus, under the instruction given, Triangle should have been awarded only 46%. The jury, however, awarded Triangle 80% of the $2,099.01.

Even if we held that Triangle's share should have been computed on the basis of a 51.4 year leasehold, by Triangle's own evidence it should only have been awarded 81% of the $2,099.01. The one percent difference between this and the 80% it was awarded by the jury is de minimis.[10]

---

**8.** We thus need not reach the state's argument that no "right to access" was taken because any direct access to the Steese Highway from the property was unsafe and therefore noncompensable or because Triangle had not obtained a required permit for the driveway to the highway.

**9.** We reject Triangle's argument that because the change in accessibility to its property diminished the value of the property, the loss is necessarily compensable. Government activity in pursuit of social goals often has a detrimental effect upon the value of some real property. Unless this detriment rises to the level of a "taking" or "damage" within the meaning of art. I, § 18 of the Alaska Constitution, however, there is no right to compensation.

**10.** Triangle also argues on appeal that, although the superior court properly instructed the jury that Triangle had a right to recover for depreciation in the value of the remaining property due to the severance of the condemned portion, the superior court so limited introduction of evidence on this item as to effectively prevent Triangle from recovering these damages. We think this argument raises a serious question as to whether Triangle has properly characterized these damages as severance

## III.

### ATTORNEY'S FEES

We now turn to Triangle's argument that the superior court erred when failing to award it full attorney's fees and costs. Triangle requested attorney's fees in the sum of $22,404.00 and costs in the sum of $10,069.70. It was awarded $9,000.00 for attorney's fees and $452.82 for costs, plus the costs of Triangle's first appraisal, when that sum is finally determined.

 Because Triangle obtained an award of $1,679.21, which exceeds by more than ten percent the $950.00 deposited by the state for its taking, an award of attorney's fees is mandated by Civil Rule 72(k)(2).[11] When considering the issue of attorney's fees, the superior court commented that "if there is a reduction from actual attorney's fees . . . it's incumbent upon the court to state the reasons for it." We agree with this. Unfortunately, the superior court failed to carry through on its good intentions and we cannot now determine why it awarded less than full attorney's fees.

We therefore find it necessary to remand this action for a reconsideration of attorney's fees and costs. We do note, however, that only those fees "necessarily incurred" in defending the eminent domain action should be awarded to Triangle. *State v. Alaska Continental Development Corp.*, 630

P.2d 977, 993 (Alaska 1980). Furthermore, while full attorney's fees are the norm under Civil Rule 72(k), such fees must be reasonable. *See Moseley v. Beirne*, 626 P.2d 580, 581 (Alaska 1981); *Ferdinand v. City of Fairbanks*, 599 P.2d 122, 126 n.12 (Alaska 1979). Thus, any attorney's fees or costs incurred by Triangle that were not necessary for it to obtain just compensation or that exceeded reasonable fees and costs need not be awarded by the superior court. If, upon remand, the superior court determines that full attorney's fees and costs are not warranted, it must articulate its reasons for so ruling.

## IV.

### INTEREST

 The last issue we consider is Triangle's argument that the superior court erred when awarding it pre-judgment interest at the rate of six percent, rather than eight percent, per annum. Triangle urges that the conflict between the various statutes controlling the rate of interest be resolved so that the interest rate of eight percent is applied in this case. While AS 09.55.330 requires the payment of "lawful interest" in eminent domain actions in which a declaration of taking was filed,[12] and AS 45.45.010 provided that the lawful interest rate in the state was eight percent at the time this case was decided (it is now 10.5 percent),[13]

damages distinguishable from Triangle's claim for loss of access compensation. We need not resolve this issue, however, because Triangle's briefing of this issue on appeal is so inadequate that we must consider this issue abandoned. Appellate Rule 212(c)(1)[h]; *L.E. Spitzer Co. v. Barron*, 581 P.2d 213, 218 (Alaska 1978); *Wernberg v. Matanuska Electric Ass'n*, 494 P.2d 790, 794 (Alaska 1972).

11. Civil Rule 72(k) provides as follows:
 *(k) Costs.* Costs and attorney's fees incurred by the defendant shall not be assessed against the plaintiff, unless:
 (1) the taking of the property is denied, or
 (2) the award of the court was at least ten (10) percent larger than the amount deposited by the condemning authority or the allowance of the master from which an appeal was taken, or
 (3) the action was dismissed under the provisions of subdivision (i) of this rule, or

(4) allowance of costs and attorney's fees appears necessary to achieve a just and adequate compensation of the owner.
 Attorney's fees allowed under this subdivision shall be commensurate with the time committed by the attorney to the case throughout the entire proceedings.

12. AS 09.55.330 provides, in relevant part, as follows: "If an order is made letting the plaintiff [state] into possession, as provided in § 380 of this chapter, the compensation and damages awarded shall draw *lawful interest* from the date of the order." [Emphasis added.]

13. AS 45.45.010(a) was amended in 1980 to increase the rate of interest in the state from eight percent to 10.5 percent. Section 2, ch. 107, SLA 1980. "The interest rate provided in sec. 2 of this Act [10.5 percent] applies only to cases filed after the effective date of this Act [July 1, 1980.]" *Id.*

AS 09.55.440 specifically states that interest at the rate of six percent is to be paid in eminent domain actions.[14]

We addressed the issue raised by Triangle in *State v. Alaska Continental Development Corp.*, 630 P.2d 977, 995–996 (Alaska 1980). We observed the discrepancies between the above-noted statutes, but concluded that AS 09.55.440 "unambiguously provides that . . . interest awarded under a declaration of taking proceeding . . . will equal six percent before and after judgment is entered." *Id.* at 995. Thus, the superior court did not err in this case when it limited the rate of pre-judgment interest to six percent as required by AS 09.55.440. Once again, however, we call to the legislature's attention the conflict between these statutes, in the hope that it will soon be resolved.

AFFIRMED in part, REMANDED in part for further proceedings consistent with this opinion.

CONNOR, J., dissents in part.

CONNOR, Justice, dissenting in part.

I agree with the majority opinion except as it relates to damages for loss of access.

The majority misconstrues the nature of available damages in an eminent domain action. Under Alaska statutes, where there is a partial taking of land, as occurred here, compensation is due both for the value of the parcel taken and for the resulting damage to the remainder:

"For the purpose of assessing compensation and damages, . . . its actual value . . . is the measure of compensation of the property to be actually taken, *and* the basis of damages to property not actually taken but injuriously affected in the cases where the damages are allowed." (emphasis added).

AS 09.55.330.

"The jury or master . . . shall ascertain and assess the following:

. . . . .

(2) if the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned. . . ."

AS 09.55.310(a).[1] *See also* 2A P. Nichols, The Law of Eminent Domain § 6.45, at 6–312 (J. Sackman rev. 3d ed. 1980) (hereafter "Nichols"); 4A Nichols §§ 14.1, 14.1[2], 14.1[3]; 1 L. Orgel, Valuation Under the Law of Eminent Domain § 48 (2d ed. 1953).

Damages to the remaining land are termed "severance damages," and are measured by the diminution in the remainder's market value, to the extent caused by the latter's severance from the taken parcel. Such damages are an "inescapable sequel to the 'taking'" and, therefore, are compensable. *Babinec v. State*, 512 P.2d 563, 567 (Alaska 1973); 4A Nichols § 14.21, at 14–53. *See also Dash v. State*, 491 P.2d 1069, 1072 n.6 (Alaska 1971). One element of severance damages is compensation for the impairment of access rights.[2] *Department of*

---

**14.** AS 09.55.440(a) provides, in relevant part, as follows: "The judgment shall include interest at the rate of six per cent per year on the amount finally awarded which exceeds the amount paid into court under the declaration of taking."

**1.** The provision further allows for the value of any benefits accruing to the remainder to be offset against the damage inflicted. AS 09.55.-310(a)(3).

**2.** Severance damages derive from the relationship of the part taken to the entire tract as the latter existed before the severance. 4A Nichols § 14.1[3], at 14–33. Damage to the remainder is measured by the depreciation in market value of the remainder which results from the taking. *State ex rel. Dept. of Highways v.*

*Linnecke*, 86 Nev. 257, 468 P.2d 8, 10 (1970); 4A Nichols § 14.21, at 14–53. All elements of value inherent in the property which would influence a prudent purchaser merit consideration in determining market value. *Linnecke*, 468 P.2d at 11; 4A Nichols § 12.1, at 12–6 to 12–7. The direct access to the old Steese Highway that Triangle enjoyed prior to the taking was an element affecting the land's value. It had utilized that access since 1962. The partial taking of land destroyed that pre-existing direct access, and necessarily affected the remainder's market value. *Linnecke*, 468 P.2d at 11. Thus loss of access by an abutting landowner or lessee is, in the case of a partial taking, an element of recoverable severance damages.

*Public Works & Buildings v. Wilson & Co.*, 62 Ill.2d 131, 340 N.E.2d 12, 19 (1976); *State ex rel. Department of Highways v. Linnecke*, 86 Nev. 257, 468 P.2d 8, 9 (1970); 2A Nichols § 6.4442, at 6–244; 4A Nichols § 14.243, at 14–182 to 184, at 14–190 to 191. Because Alaska law guarantees severance damages, and a jury trial on "the question of the amount of damages and the value of the property," AS 09.55.320; and in light of this court's strong preference for jury trials in eminent domain actions, *see Inglima v. Alaska State Housing Authority*, 462 P.2d 1002, 1006 (Alaska 1970), I would hold that whenever there is a physical taking of land, all elements of severance damages are to be considered by the jury, assuming there is evidence supporting such damage. The majority rejects this principle by holding that loss of access damages are not recoverable unless the remaining access is unreasonable as a matter of law.

The majority approach is inconsistent with *Alsop v. State*, 586 P.2d 1236 (Alaska 1976). *Alsop* supports the proposition that an abutting owner whose property is partially taken can claim impairment of access damages even though the remaining access is not unreasonably circuitous. In *Alsop*, we held that an abutting owner who had part of his property taken, and then settled with the state believing certain highway plans would be put into effect, could reopen his damage case when those plans were modified so as to impair access. No mention was made that such a right was limited to cases where the remaining access was unreasonably circuitous; only a decrease in value was required. *Id.* at 1240. There would, of course, be no reason to allow a reopening of the case unless the landowner initially had a right to damages for limitation of access. The majority opinion departs from *Alsop* by adding the requirement that the remaining access be unreasonable before loss of access damages are evaluated by a jury.

The question of when compensation is due for loss of access is, as one court noted, "one as to which very little unanimity can be found in the substantial number of decisions" from other jurisdictions. *Department of Public Works & Buildings v. Wilson & Co.*, 62 Ill.2d 131, 340 N.E.2d 12, 14 (1976). In my view, however, order can be imposed on loss of access cases by classifying them into two broad categories: (1) cases in which there is no taking of land, but road changes diminish previous access; and (2) cases in which there is a partial taking of land and a corollary loss of previously direct access.[3] This distinction is critical.[4] In the latter cases, compensation for loss of direct access is allowed,[5] as measured by the jury.

---

**3.** A subgroup of this category would, include cases in which there is a partial taking of land, but no direct access previously existed, *e. g.*, *People ex rel. Dept. of Public Works v. Home Trust Invest. Co.*, 87 Cal.Rptr. 722, 724–25 (Cal. App.1970); or where direct access to the original road remains, although a newer highway is constructed nearby, *e. g.*, *People ex rel. Dept. of Public Works v. Becker*, 262 Cal.App.2d 634, 69 Cal.Rptr. 110, 115 (1968). In such cases compensation for loss of access has been denied as a matter of law.

**4.** As Nichols states:
"There is a distinction ... between the assessment of compensation in the case of a taking and in the case of a damage when no land is taken. In the former case the mere fact that there has been a taking entitles the owner to recover for all damages to his remaining land, whether special or shared by the public generally, provided they flow from the taking, since he is constitutionally entitled to be made whole for all injuries resulting from the taking of his land ...." (footnote omitted).
2A Nichols § 6.45, at 6–312.

The Colorado decision of *State, Dept. of Highways v. Davis*, 626 P.2d 661 (Colo.1981), is to the contrary. There the court held that "whether or not property is actually taken is immaterial" and that "[c]ompensation is only required when the remainder is damaged by a substantial limitation or loss of access." *Id.* at 665. The court further concluded that there was no substantial impairment where prior to condemnation the condemnee had two direct points of access onto the state highway, and afterwards had two points of direct access to the frontage road, but was required to travel 300 feet to enter the state highway.

**5.** In each of the following cases there was a partial taking of land which diminished the abutter's previous access and the jury was allowed to award compensation for loss of access as an element of severance damages. *United States v. 97.19 Acres of Land*, 582 F.2d 878,

In the former, compensation depends on the severity of the restriction on the prior access,[6] and while this is a mixed question of law and fact, it is initially resolved by the court.

Thus, which of the two categories a case falls within determines the role of the court and the jury. Where there is no taking of land, and one claims compensation for loss of access, the initial question is whether a compensable claim is presented. *See Wernberg v. State*, 516 P.2d 1191, 1201 (Alaska 1973); *Ray v. State Highway Commission*, 196 Kan. 13, 410 P.2d 278, 280, *cert. denied*, 385 U.S. 820, 87 S.Ct. 43, 17 L.Ed.2d 57 (1966); *Filler v. City of Minot*, 281 N.W.2d 237, 242 (N.D.1979); *Stefan Auto Body v. State Highway Commission*, 21 Wis.2d 363, 124 N.E.2d 319, 321–22 (1963). Where there is an actual partial *taking* of land, however, a claim for damages is clearly presented, and if access was in fact destroyed or diminished the *jury* should determine the compensation due.

Our decision in *B & G Meats, Inc. v. State*, 601 P.2d 252 (Alaska 1979), falls within the former category. The question in that case was whether changing the traffic pattern on a frontage road, with a resulting diminishment in access to the nearby Seward Highway, constituted a taking or damaging of the plaintiff's property rights. We recognized that B & G Meats had a right of access to the Seward Highway, even though it did not abut that road. We held, however, that its right of access had not been taken or damaged by the directional change because *reasonable* access remained. Thus we ruled, as a matter of law, that no compensable claim was presented, i. e., that there was no taking which required compensation. Significantly, *B & G Meats* did not involve any actual taking of land, if did not involve an abutter,[7] and it did not involve any diminishment of previously *direct* access. *See B & G Meats*, 601 P.2d at 255 n.5. We relied on these same distinctions in *Alsop v. State*, 586 P.2d 1236, 1241 (Alaska 1978).

The case at bar, however, falls within the other category: there was a partial taking of land and that taking eliminated the abutter's previously direct access to the Steese Highway. In my view the elimination of Triangle's direct access resulting from taking land is, as a matter of law, an impairment of the abutter's right of access. It is then for the jury to resolve the extent of compensation due for that loss when assessing severance damages.

881–82 (4th Cir. 1978); *Arkansas State Highway Comm'n v. Lusby*, 251 Ark. 940, 475 S.W.2d 707, 708, (1972); *People ex rel. Dept. of Public Works v. Murray*, 172 Cal.App.2d 219, 342 P.2d 485, 490 (1959); *Dept. of Public Works & Bldgs. v. Wilson & Co.*, 62 Ill.2d 131, 340 N.E.2d 12, 14, 19 (1976); *State v. Gradison*, 381 N.E.2d 1259, 1261 (Ind.App.1978); *Balog v. State*, 177 Neb. 826, 131 N.W.2d 402, 405, 407–09 (1964) (if access substantially impaired); *State ex rel. Dept. of Highways v. Linnecke*, 86 Nev. 257, 468 P.2d 8, 9, 11 (1970); *State ex rel. Dept. of Highways v. Bowles*, 472 P.2d 896, 901 (Okl.1970); *State Highway Dept. v. Allison*, 246 S.C. 389, 143 S.E.2d 800, 802 (1965).

**6.** In each of the following cases there was no actual taking of land and compensation for loss of access depended on the severity of the loss. Thus recovery was allowed in: *State ex rel. Herman v. Jacobs*, 7 Ariz.App. 396, 440 P.2d 32, 35 (1968) (barrier erected which destroyed previous direct access); *Filler v. City of Minot*, 281 N.W.2d 237, 242 (N.D.1979) (damages recoverable if changes affecting previous access not reasonably anticipated during settlement of prior condemnation action); *Hurley v. State*, 82 S.D. 156, 143 N.W.2d 722, 726 (1966) (barrier erected which destroyed previous direct access); *McMoran v. State*, 55 Wash.2d 37, 345 P.2d 598, 600 (1959) (curb erected which destroyed previous direct access).

On the other hand, recovery was not allowed where there was no land taken and the remaining access was found to be reasonable or not materially impaired: *James v. State*, 88 Idaho 172, 397 P.2d 766, 768 (1968); *Ray v. State Highway Comm'n*, 196 Kan. 13, 410 P.2d 278, 283, *cert. denied*, 385 U.S. 820, 87 S.Ct. 43, 17 L.Ed.2d 57 (1966); *Haymore v. State Highway Comm'n*, 14 N.C.App. 691, 189 S.E.2d 611, 614–15 (1972); *Stefan Auto Body v. State Highway Comm'n*, 21 Wis.2d 363, 124 N.W.2d 319, 325 (1963).

**7.** In *B & G Meats*, the landowner was claiming damages for its loss of access to the Seward Highway which resulted from a directional change in the frontage road. Although we treated the landowner as abutting the frontage road, 601 P.2d at 254 n.3, it did *not*, as does Triangle, abut the highway to which its access had been impaired.

The majority opinion is also inconsistent with our previous decisions stating that no risk of non-persuasion is to be placed on a condemnee in eminent domain cases when the issue is "just compensation." *See State v. Hammer*, 550 P.2d 820, 826–27, 827 n.26 (Alaska 1976); *State v. Ness*, 516 P.2d 1212, 1214 n.11 (Alaska 1973); *State v. 45,621 Square Feet of Land*, 475 P.2d 553, 555 (Alaska 1970). The "risk of non-persuasion" falls on that party having the ultimate burden of convincing the court of the existence of an essential element of a claim. *See* C. McCormick, Law of Evidence § 336, at 784 (2d ed. 1972); G. Lilly, Law of Evidence § 15, at 47 (1978); IX J. Wigmore, Evidence § 2485 (3d ed. 1940). Under the majority's approach, if Triangle fails to convince the court that the remaining access is unreasonable, its loss of access damage is directed out of the case. Triangle thus bears a risk of non-persuasion on that issue.

In the past, we have approved of applying such a risk, or alternatively such a burden, in eminent domain actions only when special damages were sought. Special damages are losses or injuries of a relatively unusual kind. C. McCormick, Law of Damages § 8, at 34 (1935). Loss of profits due to the condemnation of realty underlying a business is an example. Because such losses do not necessarily or even usually flow from the condemnation of land, we have approved placing a risk of non-persuasion on the condemnee as to that claim. Thus the landowner in such a case is required to detail lost profits with reasonable certainty and to establish causation (*i. e.*, because the losses do not necessarily result from the taking). *Hammer*, 550 P.2d at 827.

General damages are those which necessarily or usually flow the conduct at issue. C. McCormick, *supra*, § 8, at 33. Damage to physical property is an example of general damage. *Hammer*, 550 P.2d at 827 n.27. Severance damages, explicitly available by statute, are damage to physical property and in partial-taking cases necessarily flow from the condemnation.[8] Because loss of access is an element of severance damages, in partial-taking cases it is a general damage. Thus, under *Hammer*, 550 P.2d at 827 n.26; *Ness*, 516 P.2d at 1214 n.11; *45,621 Square Feet of Land*, 475 P.2d at 555; there can be no risk of non-persuasion placed on the landowner, because the only issue is just compensation, *i. e.*, the loss of market value due to the severance. Thus, the risk of non-persuasion, appropriately placed on landowners seeking lost profits or other special damages,[9] is inapplicable here and Triangle should have been allowed to put in evidence of the decrease in the remainder's market value due to the loss of access.

I would hold that the trial court erred in removing the question of loss of access damages from the jury.

---

8. Triangle's loss of access necessarily resulted from the condemnation in that the state took the strip of land which provided the previously direct access, and, further, explicitly took all access rights. Its complaint stated, in part:

 "PLAINTIFF hereby condemns and takes from the DEFENDANTS any and all rights or easements appurtenant to the DEFEND-ANTS remaining property by reason of its abutting said highway, including without limiting the foregoing, all rights of ingress to or egress from the DEFENDANTS remaining property contiguous to the lands hereby conveyed to or from said highway."

9. Because *B & G Meats* did not involve any physical taking, loss of access damages there were *not* an element of severance damages and therefore not general damages necessarily resulting from the complained of action. In that case, a claim of damage due merely to a directional change of traffic flow was relatively unusual and did not result from damage to physical property, just as with other special damages. Thus where there is no taking it is appropriate to place a risk of non-persuasion on the landowner.