HAMMER PUBLICATIONS, D/B/A THE RHINOCEROS TIMES, PLAINTIFF v. THE KNIGHTS PARTY, DEFENDANT

No. COA08-654

(Filed 7 April 2009)

**Appeal and Error— appealability—summary judgment— injunction—distribution of newsletter—violation of settlement agreement—damages to be determined**

Appeal from a summary judgment and permanent injunction involving distribution of defendant's newsletters was interlocutory where the amount of damages was left to be determined, the trial judgment did not certify the summary judgment or the permanent injunction for immediate appeal, and there was no jeopardy to a substantial right. Although defendant argued loss of First Amendment rights, the presence of protected First Amendment material does not mean that defendant is exempt from the general laws, such as those governing the settlement agreement involved here. Assuming that First Amendment rights are affected, defendant's own statements demonstrate a myriad of other ways to distribute its newsletters.

Appeal by defendant from summary judgment order and permanent injunction entered on or about 18 March 2008 by Judge

V. Bradford Long in Superior Court, Guilford County. Heard in the Court of Appeals 4 December 2008.

*Smith, James, Rowlett & Cohen, L.L.P. by Seth R. Cohen, for plaintiff-appellee.*

*The Law Offices of David E. Sherrill, by David E. Sherrill, for defendant-appellant.*

STROUD, Judge.

Defendant appeals from two orders entered on 18 March 2008, one granting partial summary judgment for plaintiff and the other a permanent injunction. For the reasons as stated below, we dismiss defendant's appeal as interlocutory.

## I. Background

Plaintiff's complaint alleges the following: Plaintiff is the publisher of The Rhinoceros Times (*"The Rhino Times"*), "a weekly newspaper published in Guilford County[.]" Defendant "is a Nevada non-profit corporation" which does business in Guilford County and solicits "paid memberships to its organization." On 19 December 2006, plaintiff filed a lawsuit against defendant[1] seeking a temporary restraining order and permanent injunction against defendant to prevent defendant from distributing its newsletters by placing them within *The Rhino Times*. Following mediation, the parties entered into a Settlement Agreement on 5 October 2007. The Settlement Agreement provided in pertinent part that

1. The Knights Party, by and through its officers and agents, including Thomas Robb, National Director of The Knights Party ("Mr. Robb") acknowledge that there may have been copies of newsletters, published by The Knights Party, being placed in or about publications of The Rhino Times. If such distribution did occur, The Knights Party denies that it is aware of the source of activity.

2. The Knights Party and Mr. Robb acknowledge that it has been their policy that copies of the newsletter distributed by The Knights Party should not be distributed by placing them inside copies of The Rhino Times.

---

1. The named defendants in the prior lawsuit were Knights of the Ku Klux Klan, Knights of the Ku Klux Klan d/b/a The Knights Party, and The Knights Party. The Settlement Agreement from the prior lawsuit identified all of these parties collectively as "The Knights Party." However, in this lawsuit, The Knights Party is the only defendant.

3. The Knights Party and Mr. Robb agree that it [sic] will discourage and take reasonable actions as set out below to prevent their newsletter, i.e., The Knights Party Newsletter, or any other newsletter distributed by The Knights Party, from being placed inside The Rhino Times.

4. The Knights Party and Mr. Robb agree to contact all members of its organization residing in North Carolina, so as to put these individuals on notice that The Knights Party newsletter should not be distributed by placing such newsletters inside *The Rhino Times* for the reason stated in paragraph 2.

On or about 21 October 2007, plaintiff filed the present complaint and motions for a temporary restraining order and preliminary injunction. Plaintiff alleged it was entitled to compensatory and punitive damages for breach of contract because defendant violated the Settlement Agreement by making statements on The Knights Party web site encouraging use of *The Rhino Times*" as a means to distribute the Knights Party newsletters, in direct contravention of defendant's agreement to affirmatively discourage such activity." Plaintiff also requested entry of a temporary restraining order, a preliminary injunction, and a permanent injunction "requiring defendant to abide by the terms of the Settlement Agreement[.]"

Defendant filed its answer on 10 January 2008. Although defendant admitted the allegations of the complaint as to the entry of the Settlement Agreement and specifically as to the terms of paragraphs 3 and 4 of the agreement, defendant also alleged an affirmative defense of mutual mistake as to the Settlement Agreement. In its answer, defendant also asserts that the Settlement Agreement only prevented it from placing its newsletter inside *The Rhino Times* newspaper for distribution, but that it was still free to wrap its newsletter around a newspaper for distribution.

On 14 February 2008, plaintiff filed a motion for summary judgment as to defendant's liability for breach of contract. On 18 March 2008, the trial court granted plaintiff's motion for summary judgment as to liability for breach of contract and entitlement to compensatory and punitive damages. The summary judgment order also noted that "plaintiff is entitled as a matter of law to compensatory and punitive damages in amounts to be determined by the trier of fact." On the same date, the trial court entered a permanent injunction requiring defendant to "abide by the terms of the Settlement Agreement, including paragraphs 3 and 4 of that Agreement." The injunction further

ordered defendant to "immediately cease and desist" and "permanently enjoined [defendant] from distributing its newsletters by placing them inside, outside, around, or together with *The Rhinoceros Times*." Defendant appeals from both the order granting summary judgment and the permanent injunction.

## II. Interlocutory Appeal

The summary judgment order and permanent injunction have not resolved all of the claims raised by plaintiff as the trial court left the amount of damages "to be determined by the trier of fact." Thus, the order and injunction are interlocutory. *See Edwards v. GE Lighting Sys., Inc.*, 193 N.C. App. 578, 851, 668 S.E.2d 114, 116 (2008) (citation and quotation marks omitted) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.") "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Harris v. Matthews*, 361 N.C. 265, 269, 643 S.E.2d 566, 568 (2007) (citation and quotation marks omitted).

> Nonetheless, in two instances a party is permitted to appeal interlocutory orders. First, a party is permitted to appeal from an interlocutory order when the trial court enters a final judgment as to one or more but fewer than all of the claims or parties and the trial court certifies in the judgment that there is no just reason to delay the appeal. Second, a party is permitted to appeal from an interlocutory order when the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits. Under either of these two circumstances, it is the appellant's burden to present appropriate grounds for this Court's acceptance of an interlocutory appeal and our Court's responsibility to review those grounds.

*Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994) (citations, quotation marks, and ellipses omitted). Our Supreme Court has also noted that the appellant must demonstrate that the delay of the appeal affecting a substantial right "will work injury if not corrected before final judgment." *Harris* at 269, 643 S.E.2d at 569 (citation, quotation marks, and brackets omitted).

The trial court did not certify either the summary judgment order or the permanent injunction for immediate appeal. Therefore, defendant's brief correctly notes that it "has the burden of showing the Court

that the orders in question deprive the Appellant of a substantial right which would be jeopardized absent review prior to the final determination on the merits." Defendant argues that it has a "substantial right to distribute its information [which] will be jeopardized absent an immediate review[,]" and that its First Amendment rights will be "stripped away from it during the pendency of this action until the trial on damages [is] held."

The North Carolina Supreme Court has determined that "First Amendment rights are substantial[.]" *Harris* at 270, 643 S.E.2d at 569. However, "[i]t is not determinative that the trial court's order affects a substantial right. The order must also work injury if not corrected before final judgment." *Id.* Thus, if defendant's First Amendment rights are not merely affected, but rather "threatened or impaired by an interlocutory order, immediate appeal is appropriate." *Id.* at 270, 643 S.E.2d at 570. Thus, for immediate appeal to be proper, we must conclude that either or both the order and injunction (1) affect defendant's First Amendment rights and (2) "threaten[] or impair[]" defendant's First Amendment rights. *Id.*

Defendant's argument that its First Amendment rights are even implicated is weak. The fact that a newsletter contains speech and ideas which may be subject to First Amendment protection does not mean that defendant as an organization is exempt from general laws, including those governing contracts, i.e. the Settlement Agreement. *See generally Associated Press v. National Labor Relations Board*, 301 U.S. 103, 132, 81 L. Ed. 2d 953, 961 (1937) ("The business of the Associated Press is not immune from regulation because it is an agency of the press. The publisher of a newspaper has no special immunity from the application of general laws. He has no special privilege to invade the rights and liberties of others. He must answer for libel. He may be punished for contempt of court. He is subject to the anti-trust laws. Like others he must pay equitable and nondiscriminatory taxes on his business.")

However, even if we assume *arguendo* that defendant's First Amendment rights are affectéd by the injunction or summary judgment order, defendant has failed to demonstrate that the order or injunction "will work injury if not corrected prior to final judgment." *Harris* at 269, 643 S.E.2d at 569 (citation, quotation marks, and brackets omitted). Defendant does not articulate any particular reason why it must use *The Rhino Times* for distribution of its newsletter. The permanent injunction does not prevent defendant from distributing its literature in any way other than use of *The Rhino Times*. De-

fendant's own statements in the record belie its assertion that the injunction preventing it from use of *The Rhino Times* as a means to distribute its literature would work a substantial hardship, or indeed any hardship at all. Defendant claims on its web site that it was using pages of *The Rhino Times* only as a weight to wrap the newsletter around so that it might be more easily thrown into yards. Defendant stated that "[i]t is a common practice among many in the patriotic and evangelical movement to purchase or collect recycled newsprint, use a few sheets for weight purposes, and wrap an informational leaflet around the outside of the newsprint." Defendant makes the same point in its brief: "[w]rapping literature around discarded sheets of newsprint as an economical means of sharing information with the general public, whether that newsprint is the New York Times, the circular from a department store, or the Rhino Times . . . was and continues to be fully legal." Defendant does not contend that the permanent injunction has prevented it from publishing and distributing its newsletter or any other literature. Defendant itself noted that it could use another newspaper or the "circular from a department store" for the same purpose. Thus, neither the summary judgment order or the permanent injunction jeopardize a substantial right of defendant, as defendant's own statements demonstrate that defendant has a myriad of other ways to distribute its newsletters. Even with the order and injunction in full force and effect, defendant remains free to publish and distribute its newsletters in any manner it chooses, other than use of *The Rhino Times*. Defendant's First Amendment rights have not been "threatened or impaired[,]" *Harris* at 270, 643 S.E.2d at 570, simply because defendant is unable to distribute its newsletter in *The Rhino Times* while all other legal means of distribution are still available to it. As defendant's First Amendment rights have not been "injur[ed]," *id.*, we will not review defendant's appeal. *See Harris* at 269, 643 S.E.2d at 568-69; *Jeffreys* at 379, 444 S.E.2d at 253.

### III. Conclusion

For the reasons stated above, defendant's appeal from the order granting partial summary judgment and the permanent injunction is dismissed.

DISMISSED.

Judges CALABRIA and STEELMAN concur.