DEPARTMENT OF TRANSPORTATION, Plaintiff
v.
RAY F. WEBSTER and wife, DOROTHY WALTON WEBSTER, Defendants

No. COA12-1546

Filed 19 November 2013

**1. Appeal and Error—interlocutory orders and appeals—Section 108 hearing—vital preliminary issue—immediate appeal**

An order from a trial court's judgment in an N.C.G.S. § 136-108 hearing concerning title to property and area taken is a vital preliminary issue and is subject to immediate review on appeal.

**2. Highways and Streets—increased traffic flow—private road—public use—police power—damage to property**

The trial court did not err in a case seeking damages for increased traffic flow on a private road taken for public use by failing to dismiss plaintiff Department of Transportation's (DOT) motion for an

N.C.G.S. § 136-108 hearing. Where DOT argues that it acted within the authority of its police power and that damage to defendants' property as a result is not compensable, the trial court has authority to rule on this issue pursuant to section 108.

**3. Evidence—exclusion—increased traffic—compensation**

    The trial court did not err in a case seeking damages for increased traffic flow on a private road taken for public use by ordering that the evidence and arguments pertaining to increased traffic on Rescue Lane be excluded from the trial on compensation purportedly owed defendants due to plaintiff Department of Transportation's expansion of Brawley School Road.

Appeal by defendant from order entered 8 August 2012 by Judge Joseph N. Crosswhite in Iredell County Superior Court. Heard in the Court of Appeals 5 June 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Alexandra M. Hightower, for the State.*

*Sigmon, Clark, Mackie, Hanvey & Ferrell, PA, by Forrest A. Ferrell and Jason White, for defendant-appellants.*

BRYANT, Judge.

Where the issue before the trial court was whether increased traffic flow on a private road taken for public use was a compensable damage subject to determination by jury, it was proper for the trial court to conduct a section 108 hearing. Where the trial court determined that the area taken by DOT did not include a subsequent driveway permit and related effects of that permit, we affirm the trial court order excluding evidence of such driveway permit and effects at a subsequent trial on damages.

In 2007, the Department of Transportation ("DOT") was involved in a highway construction project in Mooresville, North Carolina known as the "Brawley School Road widening project". DOT condemned and took through eminent domain a 0.67 acre strip of land owned by defendants Ray and Dorothy Webster ("defendants") after DOT and defendants were unable to agree on a purchase price for the property. The strip of land was taken from a portion of a 20-foot-wide private road known as Rescue Lane that intersected with Brawley School Road. Brawley School Road had been an undivided two-lane road that ran in front of defendant's

property. The purpose of DOT's Brawley School Road widening project was to improve motorist safety on Brawley School Road. DOT expanded Brawley School Road from two to four lanes and installed medians between east and westbound traffic, including a median break at the intersection of Brawley School Road and Rescue Lane.

Sometime before the commencement of the DOT project, defendants, fee simple owners of 32.93 acres of land adjacent to Brawley School Road, had dedicated the right of way of Rescue Lane to private use. Adjacent to defendants' property, also bordered by Rescue Lane and Brawley School Road, was Brawley Market, a commercial development owned by Southern Properties, LLC. Following DOT's expansion of Brawley School Road and the construction of medians separating east and westbound traffic, drivers entering and exiting Brawley Market directly from and onto Brawley School Road were limited to traveling west. To travel east on Brawley School Road, drivers exiting Brawley Market had to travel west and then make a u-turn at an available median break.

Once defendants' property was condemned, a portion of Rescue Lane became a public roadway, maintained by DOT. On 26 February 2008, Southern Properties applied to DOT for a driveway permit to access Rescue Lane. Because of a break in the median at the intersection of Rescue Lane and Brawley School Road, traffic could enter and exit Rescue Lane onto Brawley School Road from or to the east and west. DOT approved Southern Properties' application in March 2009, eighteen months after the taking of defendants' property.

On or about 21 March 2012, DOT filed a motion for hearing pursuant to North Carolina General Statutes, section 136-108 requesting a determination of any and all issues raised by the pleadings other than the issue of damages, along with a memorandum in support of the motion for hearing. In its motion, DOT urged:

> In particular, the Court, sitting without a jury pursuant to G.S. § 136-108, needs to hear and decide whether [DOT]'s actions in granting a driveway access to a business 18 months after the date of taking in this matter and not a part of the project constitutes a compensable taking of the defendants' property, or whether said actions constitute a non-compensable exercise of the State's police power.

On 27 March 2012, defendants filed an objection and motion to dismiss plaintiff's motion for a section 108 hearing and, alternatively,

motion to continue the hearing. On 12 April 2012, the trial court entered an order granting defendants' motion to continue the hearing.

A section 108 hearing was held during the 25 June 2012 Civil Session of Iredell County Superior Court, the Honorable Joseph N. Crosswhite presiding. On 8 August 2012, the trial court entered its order finding and concluding that the grant of Southern Properties' driveway permit application was a function of DOT's police power as a State agency. Any effects of the permit, including the impact of an increase in traffic along defendants' property as a result of the adjacent driveway from Brawley Market, did not constitute a taking or result in compensable damages. The trial court ordered that evidence of the driveway permit and its effects "shall not be included as elements of damage at the trial of this matter." Defendants appeal.

---

On appeal, defendants raise the following issues: whether the trial court erred (I) in overruling defendants' objection and motion to dismiss the section 108 hearing; and (II) in excluding evidence and arguments regarding increased traffic on Rescue Lane at the trial of this action.

*Appeal of an interlocutory order*

[1] "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Edwards v. GE Lighting Sys., Inc.*, 193 N.C. App. 578, 581, 668 S.E.2d 114, 116 (2008) (citation and quotations omitted); *see also* N.C. Gen. Stat. § 1A-1, Rule 54(b) (2011). "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Hammer Publ'n v. Knights Party*, 196 N.C. App. 342, 345, 674 S.E.2d 720, 722 (2009) (citation and quotations omitted). However, an order from a trial court's judgment in a Section 108 hearing concerning title to property and area taken is a vital preliminary issue and is subject to immediate review on appeal:

> One of the purposes of G.S. 136-108 was to eliminate from the jury trial any question as to what land . . . [is being condemned] and any question as to its title. Therefore, should there be a fundamental error in the judgment resolving these vital preliminary issues, ordinary prudence requires an immediate appeal, for that is the proper method to obtain relief from legal errors.

*N.C. State Highway Comm'n v. Nuckles*, 271 N.C. 1, 14, 155 S.E.2d 772, 784 (1967).

Defendants appeal from the trial court order ruling on a question of whether increased traffic flow on a private road taken for public use was a compensable damage subject to a jury's determination. We grant defendant's review of this order. *See id.*

## I

**[2]** Defendants argue that the matters raised by DOT in the section 108 hearing related solely to the issue of damages and thus, were outside the scope of the purpose of a section 108 hearing. Therefore, defendants contend the trial court erred in failing to dismiss DOT's motion for the section 108 hearing. We disagree.

### Preservation of arguments

Defendants begin their argument by asserting that the trial court failed to rule on their motion to dismiss DOT's motion for a section 108 hearing. We note that generally, the failure to obtain a ruling on a motion presented to a trial court renders the argument raised in the motion unpreserved on appeal. *See* N.C.R. App. P. 10 (a)(1) (2012) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make . . . . It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion."). Therefore, we first consider whether this issue is properly before this Court.

On 26 March 2012, defendants filed an objection and motion to dismiss or alternatively, motion to continue hearing on DOT's motion for a section 108 hearing. Defendants listed the following as grounds for objection:

A.  [DOT] failed, without cause or excuse, to meet the ten day notice requirements of North Carolina General Statute § 136-108;

B.  The contents of [DOT]'s Motion and the issues raised therein are not subject to a hearing under North Carolina General Statute § 136-108 in that the matters are directly related to the issue of damages;

C.  [Defendants] would be deprived of the opportunity to marshal evidence in opposition of said Motion should the Court proceed with the Motion on March 26, 2012.

On 20 April 2012, the trial court entered an order continuing the section 108 hearing, noting that "Defendants have shown good cause to continue this matter . . . ." A section 108 hearing was conducted during the 25 June 2012 civil session of Iredell County Superior Court.

In its order entered 8 August 2012, in a sub-section entitled "Hearing Pursuant to N.C. Gen. Stat. § 136-108," the trial court stated the following:

> 17. N.C. Gen. Stat. § 136-108 provides that, "After the fil-
> ing of the plat, the judge, upon motion and 10 days'
> notice by either the Department of Transportation
> or the owner, shall, either in or out of term, hear and
> determine any and all issues raised by the pleadings
> other than the issue of damages, including, but not
> limited to, if controverted, questions of necessary
> and proper parties, title to the land, interest taken, and
> area taken." *Defendants objected to the hearing alleg-
> ing that the matters raised therein were not proper
> subjects enumerated under N.C. Gen. Stat. § 136-108.
> The Court overruled Defendants' objection.*

(emphasis added). Thus, the trial court ruled on defendants' objection to DOT's motion for a section 108 hearing. Therefore, the arguments defendants presented to the trial court were preserved, and this issue is properly before this Court.

*Analysis*

It is the trial court's function at a section 108 hearing "to decide all questions of fact." *N.C. State Highway Comm'n v. Farm Equip. Co.*, 281 N.C. 459, 467, 189 S.E.2d 272, 277 (1972). "In cases where the trial judge sits as the trier of facts, he is required to (1) find the facts on all issues joined in the pleadings; (2) declare the conclusions of law aris- ing on the facts found; and (3) enter judgment accordingly." *Gilbert Eng'g Co. v. Asheville*, 74 N.C. App. 350, 364, 328 S.E.2d 849, 857 (1985) (citations omitted).

Pursuant to North Carolina General Statutes, section 136-108, "[a]fter the filing of the plat, the judge, upon motion . . . by either the Department of Transportation or the owner, shall . . . hear and determine any and all issues raised by the pleadings *other than the issue of dam- ages* . . . ." N.C. Gen. Stat. § 136-108 (emphasis added). As to the question presented in DOT's motion for a section 108 hearing, where DOT argues that it acted within the authority of its police power and that damage to defendants' property as a result is not compensable, the trial court

has authority to rule on this issue pursuant to section 136-108. *See id.*; *see also Nuckles*, 271 N.C. 1, 155 S.E.2d 772 (holding that the trial court had authority to determine whether the interest was compensable). Moreover, as the arguments presented at the section 108 hearing raised the issue of whether defendants could present evidence on the damage to their property as a direct result of DOT's exercise of a police power and a taking, the trial court had authority to address this issue within a section 108 hearing. *See Nuckles*, 271 N.C. 1, 155 S.E.2d 772 (holding that it was proper for the trial court to decide the issue in question in a section 108 hearing, regardless of whether the issue was phrased as one of interference with a defendant's access to his property or a proper regulation by the DOT of traffic flow). Accordingly, we overrule defendants' argument that the trial court erred in failing to dismiss DOT's motion for a section 108 hearing.

*II*

**[3]** Defendants next argue that the trial court erred in ordering that the evidence and arguments pertaining to increased traffic on Rescue Lane be excluded from the trial on compensation purportedly owed defendants due to DOT's expansion of Brawley School Road. We disagree.

"Unchallenged findings of fact are presumed correct and are binding on appeal." *In re Schiphof*, 192 N.C. App. 696, 700, 666 S.E.2d 497, 500 (2008) (citations omitted). Here, the trial court made the following unchallenged findings of fact:

> 5.   The right of way area taken by [DOT] starts at the intersection of Rescue Lane and Brawley School Road . . . and extends approximately 500 feet along Rescue Lane . . . .
>
> 6.   The portion of Rescue Lane now owned by [DOT] is designated as a State road, open for use by Defendants and the public, and maintained by [DOT].
>
> 9.   Defendants contended that [DOT] took additional interests from Defendants, as Defendants stated in their verified responses to [DOT]'s Interrogatory Number 5, that "DOT took not only [defendants'] private road, but adjoining access to it."
>
> . . .
>
> 24. The project plans [for widening and improvement of Brawley School Road] also called for various improvements to be made to Rescue Lane . . . .

. . .

26. The project plans did not call for or include the construction of a driveway connecting any property owners to Rescue Lane, nor did the project include the construction of any improvements to Rescue Lane that interfere with or restrict access to Defendants' remaining property from Brawley School Road.

27. On February 26, 2008, Southern Properties, LLC, owners of a convenience store property abutting Rescue Lane on the corner of Brawley School Road and Rescue Lane, applied to [DOT]'s District Engineer's office for a driveway permit to connect its parking lot to Rescue Lane. The application was approved on April 6, 2009, and the driveway was subsequently constructed.

28. The driveway was constructed in response to the driveway permit application submitted by Southern Properties, LLC. The driveway was not authorized or constructed in furtherance of the Brawley School Road project . . . nor was the driveway necessitated by said project.

29. The driveway permit was approved approximately 18 months after the date of taking of the property acquired from Defendants in this matter, at which time Rescue Lane was a public road.

30. Prior to the condemnation action in this matter, Defendants' ability to control and restrict access to Rescue Lane was minimal as at least four private driveways accessed Rescue Lane: those belonging to the Mooresville Rescue Squad, two houses at the end of the Rescue Lan cul-de-sac, and Thompson Farm Road, the latter of which allowed traffic in and out of a dance studio and plumbing supply house on the adjoining property northeast of Rescue Lane.

. . .

32. Prior to the taking, Defendants' property, in the form of Rescue Lane, fronted Brawley School Road. After the taking, Defendants' property continues to front a public road, i.e., Rescue Lane, and continues to have direct access to Brawley School Road, except that Defendants will now be

required to travel about 500 feet down Rescue Lane to get to Brawley School Road.

The trial court then entered the following pertinent conclusions of law:

> 5. .Regulation of traffic and the granting of driveway permits are the non-compensable police powers of the State. N.C. Gen. Stat. § 136-18(5) gives [DOT] the power "to make rules, regulations and ordinances for the use of, and to police traffic on, the State highways . . . ." N.C. Gen. Stat. § 136-93 provides that [DOT] shall have sole authority to grant street and driveway permits onto State roads.

> 6. The question of what constitutes a taking is often interwoven with the question of whether a particular act is an exercise of the police power or of the power of eminent domain. If the act is a proper exercise of the police power, the constitutional provision that private property shall not be taken for public use, unless compensation is made, is not applicable. The State must compensate for property rights taken by eminent domain; damages resulting from the exercise of police power are noncompensable. *Barnes v. Highway Commission*, 257 N.C. 507, 514; 127 S.E.2d 732, 738 (1962) (citations omitted).

> . . .

> 8. The estate or interest taken by [DOT] consists of right of way only.

> 9. The driveway subsequently permitted and constructed on property owned by Southern Properties, LLC, adjacent to the subject property did not exist on the date of taking, was not part of the highway project which necessitated the partial acquisition of Defendants' property, and any subsequent change in the value of the subject property as a result of traffic from the driveway is not properly considered an area or estate taken on the date of taking. N.C. Gen. Stat. § 136-112.

> 11. Defendants retain reasonable access to Brawley School Road from their remaining property, and their access to said road has not been substantially interfered with as a result of any of [DOT]'s actions and/or improvements it made to Rescue Lane. *Board of Transp.*

*v. Terminal Warehouse Corp.*, 300 N.C. 700, 268 S.E.2d 180 (1980).

12. The approval of the Southern Properties, LLC, driveway permit application by [DOT] was a legitimate exercise of [DOT]'s police power, and any effects of the permit do not constitute a taking or compensable damages in this matter. N.C. Gen. Stat. §§ 136-18(5), 136-93.

"The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (2002) (citation and quotations omitted). As stated, "[u]nchallenged findings of fact are presumed correct and are binding on appeal." *In re Schiphof*, 192 N.C. App. at 700, 666 S.E.2d at 500. The trial court's conclusions of law are subject to *de novo* review. *City of Charlotte v. BMJ of Charlotte, LLC*, 196 N.C. App. 1, 9, 675 S.E.2d 59, 64 (2009).

Defendants contend that the trial court erred in not considering the effects of increased traffic on Rescue Lane. Although "[t]he state must compensate for property rights taken by eminent domain[,] damages resulting from the exercise of the police power are noncompensable." *Barnes v. N.C. State Highway Comm'n*, 257 N.C. 507, 514, 126 S.E.2d 732, 738 (1962) (citations and quotations omitted).

Pursuant to North Carolina General Statutes, section 136-18, DOT is vested with the power "[t]o make rules, regulations and ordinances for the use of, and to police traffic on, the State highways . . . ." N.C. Gen. Stat. § 136-18(5) (2011). DOT is also vested with specific authority to pave driveways. *See id.* § 136-18(24) ("The [DOT] is further authorized to pave driveways leading from state-maintained roads to rural fire district firehouses which are approved by the North Carolina Fire Insurance Rating Bureau and to facilities of rescue squads furnishing ambulance services which are approved by the North Carolina State Association of Rescue Squads, Inc."). Further, "[n]o opening or other interference whatsoever shall be made in any State road or highway . . . except in accordance with a written permit from [DOT] . . . ." *Id.* § 136-93; *see also Haymore v. N.C. State Highway Comm'n*, 14 N.C. App. 691, 695, 189 S.E.2d 611, 614-15 (1972) ("[T]he Commission requires driveway permits for the purpose of assuring that a proposed driveway will be constructed in a safe manner and so as not to endanger travel upon the highway. This is an exercise of the general police power . . . .").

> [W]hile a substantial or unreasonable interference with
> an abutting landowner's access constitutes the taking of
> . a property right, the restriction of his right of entrance to
> reasonable and proper points so as to protect others who
> may be using the highway does not constitute a taking.
> Such reasonable restriction is within the police power of
> the sovereign and any resulting inconvenience is *damnum
> absque injuria.*

*State Highway Comm'n v. Yarborough,* 6 N.C. App. 294, 301, 170 S.E.2d
159, 164 (1969) (citations omitted).

DOT cites *Barnes* in support of its position that the exercise of its
police power is noncompensable. *See Barnes,* 257 N.C. at 514, 126 S.E.2d
at 737-38. In *Barnes,* the petitioner raised the question of whether he was
entitled to compensation from the State for diminution in value of his
commercial property due to the construction of medians in a highway
adjacent to his businesses. The construction of the highway medians
limited access to his businesses — a filling station, a bulk oil premises,
and Frozen Custard Place — to the highway's southbound lanes. In
addressing the petitioner's argument, our Supreme Court quoted the fol-
lowing regarding the petitioner's property rights:

> Plaintiffs have no property right in the continuation or
> maintenance of the flow of traffic past their property.
> They still have free and unhampered ingress and egress
> to their property. . . . Re-routing and diversion of traffic
> are police power regulations. Circuity of route, result-
> ing from an exercise of the police power, is an incidental
> result of a lawful act. It is not the taking or damaging of
> a property right.

*Id.* at 516, 126 S.E.2d at 738-39 (citation and quotations omitted). We
acknowledge that there is a "significant distinction between 'right of
access' and 'regulation of traffic flow.' " 4 NICHOLS ON EMINENT DOMAIN
§ 13.23[2] (Julius L. Sackman ed., 3d ed. 2012 (Matthew Bender)).
Specifically, there is no right to compensation for increased traffic flow.

> Although an abutting property owner may be inconve-
> nienced by [a] traffic regulation immediately in front of his
> property, he has no remedy if such regulation be reason-
> ably adapted to the benefit of the traveling public.

*Barnes,* 257 N.C. at 516, 126 S.E.2d at 739 (citation and quotations omit-
ted); *see also Nuckles,* 271 N.C. at 22, 155 S.E.2d at 789 ("(A)n abutting

**DEPT. OF TRANSP. v. WEBSTER**

[230 N.C. App. 468 (2013)]

property owner is not entitled to compensation because of the construction of a highway . . . if he be afforded direct access by local traffic lanes . . . . That access is provided by the service roads. These service roads are part of the highway system. They serve not only the petitioners but any member of the public who desires to use the same." (citation and internal quotations omitted)).

Here, the trial court made numerous findings of fact regarding DOT's granting of a driveway permit to Southern Properties. In its conclusions of law, the trial court held that the DOT's actions were "a legitimate exercise of police power, and any effects of the permit do not constitute a taking or compensable damages in this matter." *See Barnes*, 257 N.C. 507, 126 S.E.2d 732. As the trial court's findings of fact were supported by competent evidence and those findings supported its conclusions of law, we hold the trial court did not err in excluding evidence concerning increased traffic on Rescue Lane from defendants' trial over compensation purportedly owed to defendants by DOT. Accordingly, we overrule defendants' argument and affirm the trial court's order to exclude from a jury trial on damages evidence regarding the increase in traffic along Rescue Lane.

Affirmed.

Judges STEPHENS and DILLON concur.