BRYANT, Judge.
 

 *40
 
 Where the trial court did not lack subject matter jurisdiction, we affirm. However, where the trial court's findings and conclusions regarding the compensable property
 
 *153
 
 interests taken are unsupported by the evidence and contrary to law, we reverse.
 

 On 6 December 2011, the North Carolina Department of Transportation ("plaintiff-DOT") filed a civil action in Mecklenburg County Superior Court and an acknowledgment of taking pursuant to a resolution of plaintiff-DOT authorizing the appropriation of defendant's property for the construction of a highway project. When the parties could not agree on the purchase price of the leasehold interest to
 
 *41
 
 be appropriated, the trial court held a Section 108
 
 [1]
 
 hearing and made findings of fact and conclusions of law. The trial court's findings of fact included those set forth below.
 

 In 1981, a billboard ("the billboard") was originally constructed on a lot (the "CHS Lot") located at the corner of Independence Boulevard and Sharon Amity Road in Charlotte, North Carolina. It was legally erected pursuant to permits issued by the City of Charlotte and plaintiff-DOT. It was constructed pursuant to a lease agreement between Craig T. Brown, Jr., then-owner of the CHS Lot, and National Advertising Company ("National"), predecessor in interest to defendant Adams Outdoor Advertising of Charlotte Limited Partnership ("defendant"). The billboard had two back-to-back V-type sign face displays of approximately 14' x 48' each or 672 square feet of advertising space per face.
 

 About ten years later, on 15 August 1991, a new lease agreement was entered into by National and C.H.S. Corporation, then-owner of the land. The new lease had an original term of six years and thereafter was to run on a year-to-year basis. In October 2001, defendant acquired the billboard from National and all property rights pertaining thereto. At that time, defendant inherited the 1991 lease which was operating on a year-to-year basis.
 

 On 26 September 2006, defendant entered into a lease agreement (the "2006 lease") with C.H.S. Corporation to secure the CHS Lot for the purpose of operating, maintaining, repairing, modifying, and reconstructing the billboard. The original term of the 2006 lease commenced on 1 August 2007 and ran for a ten-year period with one automatic ten-year extension. Therefore, except for the discretion specifically reserved to defendant to cancel upon the happening of certain events,
 
 [2]
 
 the 2006
 
 *42
 
 lease would not terminate until 1 August 2027. The 2006 lease was recorded in the Mecklenburg County Register of Deeds Office in Book 22206 at Pages 740-44 and permitted defendant to use the CHS Lot for outdoor advertising purposes only.
 

 In the 2006 lease, defendant agreed to pay substantially more rent to the landlord C.H.S. Corporation than what was found in the 1991 lease due to the high value of the unique location of the CHS Lot and the need to secure defendant's investment for a long term. Additionally, the lease contained the following language regarding defendant's right to remove its billboards:
 

 All Structures erected by or for the Lessee [defendant] or its predecessors-in-interest
 
 *154
 
 ... shall at all times be and remain the property of [defendant] and the above-ground portions of the Structures may be removed by [defendant,] ... notwithstanding that such Structures are intended by Lessor and [defendant] to be permanently affixed to the Property.
 

 Prior to plaintiff-DOT's taking on 6 December 2011, defendant owned and operated the billboard and each year would pay the DOT to renew its State permit for the billboard.
 

 Although the billboard was legally erected and maintained, it was not, as of 6 December 2011, in conformity with then existing height regulations adopted by plaintiff-DOT for outdoor advertising adjacent to interstates or federal aid primary highways. The sign was approximately sixty-five feet in height, and DOT regulations, adopted in 1990, set height limitations at fifty feet. However, because it was legally existing at the time it was erected, the billboard was grandfathered as a nonconforming sign that could be maintained under an exception to applicable state statute and DOT regulations.
 
 See
 
 Charlotte, N.C., Code § 13.112(1)(c).
 

 *43
 
 Also, as of 6 December 2011, the CHS Lot was zoned B-2 by the City of Charlotte, and several years earlier, the City of Charlotte enacted zoning regulations banning new billboard locations within its jurisdiction, including along Independence Boulevard. The immediate neighborhood near the CHS Lot consisted of many commercial properties with a large concentration of retail shopping centers and automobile dealerships. Approximately 85,000 vehicles travel Independence Boulevard on a daily basis and it is one of the main thoroughfares linking the Charlotte downtown with areas to the east, including Union County, which is one of the fastest growing counties in the State.
 

 However, because of the nonconforming nature of the billboard and the restrictive regulatory climate, relocation of the billboard in the City of Charlotte was not possible. Additionally, because plaintiff-DOT acquired the entire CHS Lot for highway widening purposes, neither the billboard, nor any substantial part thereof, could be moved anywhere else on the same site. As of 6 December 2011, the date of the taking, defendant had at least sixteen years remaining (until August 2027) on the lease to use the CHS Lot and maintain the billboard for outdoor advertising purposes.
 

 The Complaint and Declaration of taking condemned defendant's right to use the CHS Lot for outdoor advertising and to operate and maintain on said land a sign for that purpose. Plaintiff-DOT had become the fee owner of the CHS Lot, having acquired title voluntarily from the former owner, C.H.S. Corporation, on 6 December 2011. On or about 13 December 2012, defendant filed an Answer praying for the appointment of commissioners to appraise any damage to the land as a result of the taking pursuant to Article 9, N.C. Gen.Stat. § 136-109.
 

 Both parties filed motions for a "Section 108 hearing," pursuant to N.C. Gen.Stat. § 136-108, to hear all matters raised by the pleadings, except the issue of damages. On 23-25 June 2014, a Section 108 hearing was held pursuant to the motions before the Honorable Lisa C. Bell, Special Superior Court Judge presiding, in Mecklenburg County Superior Court. The trial court entered an order on 27 August 2014 finding,
 
 inter alia,
 
 that plaintiff-DOT took various property interests of defendant and that defendant was entitled to compensation pursuant to the Outdoor Advertising Control Act ("OACA"), for the value of defendant's outdoor advertising. On 24 September 2014, plaintiff-DOT gave Notice of Appeal from the order.
 

 _________________________
 

 *44
 
 On appeal, plaintiff-DOT argues that (I) the trial court lacked subject matter jurisdiction and erred by applying Article 11, the OACA, to a condemnation proceeding; (II) the trial court's findings and conclusions are unsupported by the evidence and contrary to law; and (III) the trial court erred by adopting the wrong measure of compensation and damages.
 

 I
 

 Plaintiff-DOT first argues that the trial court lacked subject matter jurisdiction and erred by applying the incorrect article to a condemnation proceeding. Specifically, plaintiff-DOT argues that the trial court
 
 *155
 
 erred by applying the Outdoor Advertising Control Act, codified within Article 11 of North Carolina General Statutes Chapter 136, rather than Article 9 (titled "Condemnation"), Chapter 136 of the North Carolina General Statutes. Instead, plaintiff-DOT argues the trial court should have applied Article 9
 
 exclusively
 
 because plaintiff-DOT filed this action under Article 9 for the sole purpose of acquiring rights of way for the construction of highway improvements to E. Independence Boulevard and did not file the action under Article 11 to condemn a nonconforming billboard that violated the OACA. In other words, plaintiff-DOT contends that because the pleadings, consisting of plaintiff-DOT's complaint and defendant's answer, did not expressly raise the issue of N.C. Gen.Stat. § 136-131, the trial court lacked subject matter jurisdiction to decide the issue.
 
 [3]
 
 We agree with plaintiff-DOT to the extent the trial court erred in applying Article 11; however, we disagree that the trial court lacked subject matter jurisdiction to conduct a Section 108 Hearing.
 

 "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it."
 
 In re McKinney,
 

 158 N.C.App. 441
 
 , 443,
 
 581 S.E.2d 793
 
 , 795 (2003) (citations and quotation marks omitted). "A court has jurisdiction over the subject matter if it has the power to hear and determine cases of the general class to which the action in question belongs."
 

 *45
 

 Dep't of Transp. v. Tilley,
 

 136 N.C.App. 370
 
 , 373,
 
 524 S.E.2d 83
 
 , 86 (2000) (quoting
 
 Balcon, Inc. v. Sadler,
 

 36 N.C.App. 322
 
 , 324,
 
 244 S.E.2d 164
 
 , 165 (1978) ). In
 
 Tilley,
 
 this Court, citing N.C. Gen.Stat. § 136-103(a) of Article 9, stated that "[o]ur legislature has expressly conferred jurisdiction over condemnation matters on our superior courts."
 

 Id.
 

 Article 9 procedures begin with the application of N.C. Gen.Stat. § 136-103 and the filing of a complaint and declaration of taking. N.C.G.S. § 136-103 (2015). Pursuant to N.C.G.S. § 136-103, both plaintiff-DOT's complaint and declaration of taking are to provide "[a] statement of the authority under which and the public use for which said land is taken."
 

 Id.
 

 § 136-103(c)(1). N.C. Gen.Stat. § 136-103 further dictates that the complaint and declaration describe the "entire tract or tracts affected" and the "estate or interest in said land."
 

 Id.
 

 §§ 136-103(c)(2), (3). Once a complaint and declaration of taking is filed, "[a]ny person whose property has been taken by" DOT may file an answer to the complaint "
 
 only
 
 praying for a determination of just compensation." N.C. Gen.Stat. § 136-106(a) (emphasis added).
 

 A Section 108 hearing is conducted by the trial court which "shall ... hear and determine any and all issues raised by the pleadings other than the issue of damages, including, but not limited to,
 
 if controverted,
 
 questions of necessary and proper parties, title to the land, interest taken, and area taken." N.C. Gen.Stat. § 136-108 (2015) (emphasis added).
 

 Here, in both plaintiff-DOT's complaint and declaration of taking, plaintiff-DOT described "the authority vested in the plaintiff under the provisions of Chapter 136 of the General Statutes." Plaintiff-DOT followed the mandate of N.C.G.S. § 136-103 by describing defendant's lease "for the purpose of erecting and maintaining one Billboard Advertising Structure" permitted by plaintiff-DOT. In filing its answer, defendant followed N.C.G.S. § 136-103(a), admitting some allegations and denying others, including plaintiff-DOT's allegation regarding the "tract or tracts affected" or the "interest in said land." N.C.G.S. §§ 136-103(c)(2), (3).
 

 "In reality, [plaintiff-DOT] [is] contesting the propriety of the
 
 pleadings,
 
 not the propriety of the court's
 
 jurisdiction.
 
 "
 
 Tilley,
 

 136 N.C.App. at 373
 
 ,
 
 524 S.E.2d 83
 
 , 86 (2000) (emphasis added). In
 
 Tilley,
 
 the defendants argued that because the plaintiff's declaration
 
 *156
 
 of taking did not correctly list the entire tract affected, the trial court did not have subject matter jurisdiction over the property to be taken.
 

 Id.
 

 This Court rejected that argument, finding it to be "contrived and without merit."
 

 Id.
 

 Here, plaintiff-DOT employs a similar tactic by arguing that the trial court lacked subject matter jurisdiction because defendant's answer
 
 *46
 
 discussed Article 11 and plaintiff-DOT did not file an action under that article. While we agree the trial court erred in applying Article 11, we disagree with plaintiff-DOT's contention that failing to apply Article 9
 
 exclusively
 
 affected the jurisdiction of the court. All that is necessary to invoke the trial court's jurisdiction to conduct a Section 108 hearing is that the " interest in said land" be in dispute,
 
 see
 
 N.C.G.S. § 136-108 ;
 
 City of Winston-Salem v. Slate,
 

 185 N.C.App. 33
 
 , 41,
 
 647 S.E.2d 643
 
 , 649 (2007).
 

 Here, defendant denied plaintiff-DOT's allegation regarding what precisely was defendant's "interest in said land"-the CHS Lot-upon which defendant had a leasehold interest and a billboard. Therefore, the trial court's erroneous application of Article 11 did not affect subject matter jurisdiction to conduct a Section 108 hearing. Accordingly, plaintiff-DOT's argument regarding jurisdiction is overruled.
 

 II
 

 Plaintiff-DOT next argues that the trial court's findings of fact and conclusions of law regarding the compensable property interests taken are unsupported by the evidence and contrary to law. Specifically, plaintiff-DOT contends the trial court erred in finding and concluding that (1) defendant's billboard was a permanent leasehold improvement and not personal property; (2) defendant's alleged loss of business and outdoor advertising income are compensable property interests in an Article 9 proceeding; (3) the DOT permit granted to defendant under the OACA is a compensable property interest; and (4) the option to renew contained in defendant's lease is a compensable real property interest. We agree.
 

 "The standard of review on appeal from a judgment entered after a non-jury trial
 
 [4]
 
 is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment."
 
 Dep't of Transp. v. Webster,
 

 230 N.C.App. 468
 
 , 477,
 
 751 S.E.2d 220
 
 , 226 (2013) (quoting
 
 Cartin v. Harrison,
 

 151 N.C.App. 697
 
 , 699,
 
 567 S.E.2d 174
 
 , 176 (2002) ). "[U]nchallenged findings of fact are presumed correct and are binding on appeal[,]" but the trial court's conclusions of law are reviewed
 
 de novo.
 
 Id.
 

 (citations and quotation marks omitted).
 

 *47
 
 By exercise of its eminent domain powers, plaintiff-DOT took defendant's property interests related to the CHS Lot. "The power of eminent domain, that is, the right to take private property for public use, is inherent in sovereignty."
 
 Town of Morganton v. Hutton & Bourbonnais Co.,
 

 251 N.C. 531
 
 , 533,
 
 112 S.E.2d 111
 
 , 113 (1960). Just compensation limits eminent domain power and is guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 19 of the North Carolina Constitution. U.S. Const. amend. XIV ; N.C. Const. art. I, § 19 ;
 
 Carolina Beach Fishing Pier, Inc. v. Town of Carolina Beach,
 

 274 N.C. 362
 
 , 372,
 
 163 S.E.2d 363
 
 , 370 (1968).
 

 In a compensation action, a property owner is entitled to " 'the full and perfect equivalent of the property taken.' ... 'In awarding just compensation for the property taken,' the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken."
 
 Lea Co. v. North Carolina Bd. of Transp.,
 

 317 N.C. 254
 
 , 260,
 
 345 S.E.2d 355
 
 , 358 (1986) (internal citations omitted). It is well-settled that "a leasehold is a property right, ... [and] [a]ny diminution of that right by the sovereign in the exercise of its power of eminent domain entitles lessee to compensation."
 
 Horton v.
 

 *157
 

 Redev. Comm'n of High Point,
 

 264 N.C. 1
 
 , 8-9,
 
 140 S.E.2d 728
 
 , 734 (1965) (citations omitted). Furthermore, the power of eminent domain, being contrary to common law property rights, must be exercised strictly in accord with enabling statutes, and any ambiguities pertaining to such power are construed in favor of the property owner.
 
 Proctor v. State Hwy. & Pub. Works Comm'n,
 

 230 N.C. 687
 
 , 692,
 
 55 S.E.2d 479
 
 , 482-83 (1949).
 

 (
 
 1) Classification of Billboard
 

 Plaintiff-DOT's first assignment of error regards the proper classification of defendant's billboard. Plaintiff-DOT argues the trial court erred in Findings of Fact Nos. 21, 27, 32, 33, 40, 41, 45, and Conclusions of Law Nos. 8, 10-13, by holding that defendant's billboard was a permanent leasehold improvement and not personal property. We agree.
 

 "[W]hether property attached to land is removable personal property or part of the realty is determined by examining external indicia of the lessee's 'reasonably apparent' intent when it annexed its property to the land."
 
 Nat'l Adver. Co. v. N.C. Dep't of Transp.,
 

 124 N.C.App. 620
 
 , 626,
 
 478 S.E.2d 248
 
 , 250-51 (1996) (citing
 
 Little v. Nat'l Serv. Indus., Inc.,
 

 79 N.C.App. 688
 
 , 693,
 
 340 S.E.2d 510
 
 , 513 (1986) ). This classification is important because the law does not authorize a court to award compensation for personal property, such as a billboard sign.
 
 N.C. Gen. Stat. § 13619
 
 (a) (2015) (stating NCDOT is authorized to condemn only land,
 
 *48
 
 materials, and timber for rights of way, not personal property);
 
 Lyerly v. State Hwy. Comm'n,
 

 264 N.C. 649
 
 , 650,
 
 142 S.E.2d 658
 
 , 658 (1965) ( "No allowance can be made for personal property, as distinguished from fixtures, located on the condemned premises [.]" (citation omitted)). "Items of personal property which are attached to the leasehold for business purposes are trade fixtures ... and they remain the personal property of the tenant."
 
 Taha v. Thompson,
 

 120 N.C.App. 697
 
 , 703,
 
 463 S.E.2d 553
 
 , 557 (1995) (internal citations omitted) (citing
 
 Stephens v. Carter,
 

 246 N.C. 318
 
 , 321,
 
 98 S.E.2d 311
 
 , 313 (1957) ).
 

 In
 
 National Advertising Co.,
 
 this Court found that the billboard at issue was "removable personal property and not part of the realty."
 
 124 N.C.App. at 625
 
 ,
 
 478 S.E.2d at 250
 
 . In "examining the external indicia of the lessee's 'reasonably apparent' intent," this Court found the following in support of its conclusion that the billboard was personal property: (1) the landowners signed a disclaimer of any ownership in the sign; (2) the sign was listed as personal property for tax purposes; and (3) in response to plaintiff-DOT's First Request for Admissions, the sign was noted to be a "trade" fixture, which by law is removable personal property.
 
 Id.
 
 at 626,
 
 478 S.E.2d at 251
 
 .
 

 In the instant case, "examining the external indicia of the lessee's (defendant's) reasonably apparent intent," the external indicia show that the billboard and structure were personal property and the trial court's ruling (Conclusion of Law No. 10) to the contrary is not supported by the facts.
 

 First, defendant, not plaintiff-DOT, physically removed the billboard and structure from the CHS Lot by carefully dismantling them and reinstalling major components thereof at another billboard location along Independence Boulevard, as permitted by the lease agreement. The lease between defendant and C.H.S. Corporation specifically stated that
 

 [a]ll Structures erected by or for the Lessee [defendant] ...
 
 shall at all times be and remain the property of [defendant
 
 ] and the above-ground portions of the Structures may be removed by the [defendant,] ...
 
 notwithstanding that such structures are intended by Lessor and [defendant] to be permanently affixed to the Property.
 

 (emphasis added). The clear intent of the parties as evidenced by the lease agreement was for the billboard to remain defendant's property and be removed at the expiration of the lease, absent the imposition of a cancellation provision in the lease.
 
 See supra
 
 note 2.
 

 *49
 
 Second, for tax purposes, defendant's billboard structures are classified as "Business Personal Property" and the company pays property taxes to Mecklenburg County in accordance with that classification. Patricia
 
 *158
 
 Peterson, plaintiff-DOT's tax witness, testified that the North Carolina Department of Revenue treats a billboard as personal property even if the land is owned in fee by the billboard company. Significantly, defendant previously admitted in a different case that its billboards are personal property and subject to personal property tax assessments.
 
 Adams Outdoor Adver., Ltd. v. City of Madison,
 

 294 Wis.2d 441
 
 , 450, 458,
 
 717 N.W.2d 803
 
 , 807-08, 811-12 (2006) (acknowledging personal property classification of billboard in tax assessment dispute).
 

 Third, defendant's vice president for real estate admitted in a sworn affidavit and other documents that the billboard was personal property and agreed to accept relocation money for it. At the hearing, plaintiff-DOT's counsel argued that this evidence was not offered to dispute the validity of the relocation or eminent domain claim or reveal the settlement of a claim, as defendant argued, but rather it was offered and admitted to show defendant's inconsistent position regarding the classification of the billboard as personal property.
 
 See
 

 Wilson Realty & Constr., Inc. v. Asheboro-Randolph Bd. of Realtors, Inc.,
 

 134 N.C.App. 468
 
 , 472,
 
 518 S.E.2d 28
 
 , 31 (1999) (noting statement made by agent of party opponent regarding settlement of a claim in a different matter was admissible against party opponent under N.C.G.S. § 1A-1, Rule 801(d) ).
 

 Accordingly, the trial court erred in finding and concluding that the billboard and its structure were not movable personal property as this conclusion is not supported by evidence and is contrary to law.
 

 (
 
 2) Loss of Income
 

 Plaintiff-DOT next argues that defendant's alleged loss of business and outdoor advertising income are not compensable property interests in an Article 9 proceeding. Specifically, plaintiff-DOT contends that the trial court erred by stating plaintiff-DOT took defendant's "right to receive rental income" generated by the billboard sign and the jury should be allowed to consider that lost income. Furthermore, plaintiff-DOT argues that the lost advertising "rental income" attributable to the billboard is more accurately termed lost "business income." We agree.
 

 In highway eminent domain proceedings, "[t]he longstanding rule in North Carolina is that evidence of lost business profits is inadmissible in condemnation actions" because the alleged losses are too speculative in nature, cannot be calculated with certainty, and are reliant on too many contingencies.
 

 *50
 

 Dep't of Transp. v. M.M. Fowler, Inc.,
 

 361 N.C. 1
 
 , 7,
 
 637 S.E.2d 885
 
 , 891 (2006) (citing
 
 Pemberton v. City of Greensboro,
 

 208 N.C. 466
 
 , 470-72,
 
 181 S.E. 258
 
 , 260-61 (1935) ). However, " [e]vidence of the
 
 rental revenues
 
 from land may be admitted and considered in determining the fair market value of the land at the time of the taking."
 
 Raleigh-Durham Airport Auth. v. King,
 

 75 N.C.App. 121
 
 , 123-24,
 
 330 S.E.2d 618
 
 , 619-20 (1985) (emphasis added) (citations omitted);
 
 see
 

 City of Charlotte v. Hurlahe,
 

 178 N.C.App. 144
 
 , 149-51,
 
 631 S.E.2d 28
 
 , 31-32 (2006) (holding rental income from airport parking lot admissible to show market value where rent directly attributable to the land and comparable sales unavailable).
 

 (
 
 3) DOT Permit
 

 Plaintiff-DOT also argues that the DOT permit granted to defendant under the OACA is not a compensable property interest. Specifically, plaintiff-DOT argues that it was error for the trial court to hold that the value of the OACA permit should be considered by the finder of fact. We agree.
 

 Once land has been deemed condemned and taken for the use of the DOT, "the right to just compensation therefor shall vest in the person owning said property
 
 or any compensable interest therein
 
 at the time of the filing of the complaint and the declaration of taking...." N.C. Gen.Stat. § 136-104 (2015) (emphasis added). Generally, termination of a government-issued permit is not a compensable taking of a property interest.
 
 See
 

 Haymore v. N.C. State Hwy. Comm'n,
 

 14 N.C.App. 691
 
 , 696,
 
 189 S.E.2d 611
 
 , 615 (1972) (noting that the granting of a driveway permit application is a regulatory action that does not vest an irrevocable property right in the owner).
 

 *159
 
 Plaintiff-DOT's evidence, based on Roscoe Shiplett ("Shiplett"), a Charlotte appraiser's forty-three years of experience, was that the permit's worth should not be included in the value of the leasehold because it is not part of the real estate and "goes to the overall business enterprise." Shiplett also testified that he has never seen another appraiser assign a specific value to a billboard permit when valuing a leasehold interest. We have found nothing in our jurisprudence that has held contrary to the statement made by Shiplett. Thus, the trial court erred in holding that the value of the OACA permit should be considered by the finder of fact in determining just compensation.
 

 (
 
 4) Option to Renew
 

 Plaintiff-DOT next argues that the option to renew contained in defendant's lease is also not a compensable property interest. Specifically,
 
 *51
 
 plaintiff-DOT contends that the court's ruling that defendant's expectation of renewal "in perpetuity" of defendant's lease was a compensable property interest that should be considered by the finder of fact is not supported by the evidence and is contrary to law. Plaintiff-DOT argues that defendant is not entitled to compensation for any purported expectation of renewal of its leasehold interests beyond the terms of the lease. We agree.
 

 While plaintiff-DOT's argument is supported primarily by North Carolina case law noting that "perpetual leases" are disfavored and "will not be enforced absent language in the lease agreement which expressly or by clear implication indicates that this was the intent of the parties,"
 
 Lattimore v. Fisher's Food Shoppe, Inc.,
 

 313 N.C. 467
 
 , 470,
 
 329 S.E.2d 346
 
 , 348 (1985), the enforcement of a "perpetual lease" is not at issue here. Rather, the issue is whether the expectation of a lease renewal is a proper consideration in establishing just compensation.
 
 See
 

 Almota Farmers Elevator & Warehouse Co. v. U.S.,
 

 409 U.S. 470
 
 , 473-74,
 
 93 S.Ct. 791
 
 , 794-795,
 
 35 L.Ed.2d 1
 
 , 8 (1973) (noting that the expectation of renewal is a proper consideration in establishing just compensation, especially when tenant fixtures (grain elevators) have a substantially long useful life). Further, it is well established that when determining just compensation, "the trial court should admit any relevant evidence that will assist the jury in calculating the fair market value of the property and the diminution in value caused by the condemnation."
 
 M.M. Fowler,
 

 361 N.C. at 6
 
 ,
 
 637 S.E.2d at
 
 890 (citing
 
 Abernathy v. S. & W. Ry. Co.,
 

 150 N.C. 97
 
 , 108-09,
 
 63 S.E. 180
 
 , 185 (1908) ).
 

 Here, at the time of the taking, defendant's lease for its billboard had been tied to the CHS Lot for approximately thirty years. When defendant acquired the billboard and all property rights pertaining thereto, defendant inherited an existing lease with CHS, which operated on a year-to-year basis. Around 26 September 2006, defendant negotiated and entered into a lease agreement with CHS to secure, long term, the site for the billboard. The original term of the lease commenced on 1 August 2007 and ran for a ten-year period with one automatic ten-year extension. Except for some limited circumstances reserved to defendant, neither CHS nor defendant could terminate the lease until 1 August 2027. After 1 August 2027, the lease would automatically renew for successive ten year periods unless either CHS or defendant gave ninety days' notice to terminate prior to the deadline. As of 6 December 2011-the date of the taking in this case-defendant had at least sixteen years to use the CHS Lot and maintain the billboard for outdoor advertising purposes.
 

 *52
 
 In its Finding of Fact No. 42, which plaintiff-DOT does not challenge, the trial court found the following:
 

 42. A willing, knowledgeable buyer in the market for a billboard location and a willing seller of such property in setting a price would factor in the strength of the rights arising from a lease as improved with a sign structure and the status of compliance with State and local laws, in this case being the protections afforded to the sign owner from being legally permitted and the benefits accruing from the nonconforming nature of the property.
 

 However, because there is no North Carolina case law specifically allowing the expectation of renewal of a lease to be considered
 
 *160
 
 in valuing property (here, a billboard), and because the instant case does not provide facts to support such an extension of the law, the trial court erred in finding and concluding that defendant's expectation of renewal "in perpetuity" of its leasehold interest was a compensable property interest.
 

 As we reverse the trial court's findings and conclusions that various components of defendant's leasehold interest were compensable due to the trial court's ultimate conclusion that the billboard was a "permanent leasehold improvement," we note defendant's reliance and the trial court's acceptance of numerous cases from other states which have analyzed these components as being favorable to defendant's position.
 
 See, e.g., The
 

 Lamar Corp. v. State Hwy. Comm'n,
 

 684 So.2d 601
 
 , 604 (Miss.1996) (holding highway billboard located on property condemned for highway expansion was "structure," entitling owner to compensation in eminent domain proceedings, regardless of whether billboard was personal or real property);
 
 State of Okla. ex rel. Dep't of Transp. v. Lamar Adver. of Okla., Inc.,
 

 335 P.3d 771
 
 , 775-76 (Okla.2014) (holding that where billboards are part of a taking in a condemnation proceeding, such trade fixtures, like billboards, are "generally treated as real property");
 
 The
 

 Lamar Corp. v. City of Richmond,
 

 241 Va. 346
 
 ,
 
 402 S.E.2d 31
 
 , 34 (1991) (holding government's condemnation of real estate includes billboards as a matter of law);
 
 Dep't of Transp. v. Drury Displays, Inc.,
 

 327 Ill.App.3d 881
 
 ,
 
 261 Ill.Dec. 875
 
 ,
 
 764 N.E.2d 166
 
 , 172 (2002) ("Billboard owners have a right to just compensation for any condemned sign.").
 

 However, we also note that such authority is not controlling. And thus, we agree with plaintiff-DOT that the trial court erred in finding and concluding that the billboard is a "permanent leasehold improvement" and that lost profits, a DOT permit, and the option to renew are compensable property interests.
 

 *53
 

 III
 

 In plaintiff-DOT's final argument, it contends that the trial court erred by adopting the wrong measure of compensation and damages. Specifically, plaintiff-DOT argues that the trial court erred by holding that the "bonus value" method of calculating compensation interest was improper and excluding evidence of the "bonus value" method from the trier of fact pursuant to Rules 401 and 403 of the North Carolina Rules of Evidence, and allowing consideration of income attributable to the billboard and the outdoor advertising. We agree.
 

 Section 108 of Chapter 136, titled "Determination of issues other than damages," states as follows: "[T]he judge ... shall ... hear and determine any and all issues raised by the pleadings other than the issue of
 
 damages,
 
 including, but not limited to, if controverted, questions of necessary and proper parties, title to the land, interest taken, and area taken." N.C.G.S. § 136-108 (emphasis added).
 

 "One of the purposes of G.S. 136-108 is to eliminate from the jury trial any question as to what land [plaintiff-DOT] is condemning and any question as to title."
 
 City of Wilson v. Batten Family, L.L.C.,
 

 226 N.C.App. 434
 
 , 438,
 
 740 S.E.2d 487
 
 , 490 (2013) (quoting
 
 N.C. Stat.
 

 Hwy. Comm'n v. Nuckles,
 

 271 N.C. 1
 
 , 14,
 
 155 S.E.2d 772
 
 , 784 (1967) ). Accordingly, "[a]n order entered pursuant to N.C. Gen.Stat. § 136-108 is an interlocutory order because '[t]he trial court d[oes] not completely resolve the entire case,' but instead 'determine[s] all relevant issues other than damages
 
 in anticipation of a jury trial on the issue of just compensation.
 
 ' "
 
 Dep't of Transp. v. BB & R, LLC,
 
 --- N.C.App. ----, ----,
 
 775 S.E.2d 8
 
 , 11 (2015) (emphasis added) (quoting
 
 Dep't of Transp. v. Rowe,
 

 351 N.C. 172
 
 , 174,
 
 521 S.E.2d 707
 
 , 708-09 (1999) ).
 

 The property interest determined at the Section 108 hearing was the "leasehold interest in the land on which the billboard stood." Defendant's position was that the billboard was a permanent improvement, not personal property, and therefore part of the property interest condemned by DOT and subject to just compensation. However, we have determined that the trial court's classification of the billboard as a permanent leasehold improvement was erroneous, which error resulted in improper measure of compensation. Therefore, because the trial court's ruling on
 
 *161
 
 what measure of damages would be included or excluded at a jury trial on damages was based on an erroneous premise, we must also reverse the trial court's order addressing the measure of damages.
 
 *54
 
 In accordance with the forgoing, the trial court's judgment is
 

 REVERSED.
 

 Judges GEER and McCULLOUGH concur.
 

 [1]
 

 The purpose of a Section 108 hearing is to "eliminate from the jury trial any question as to what land [DOT] is condemning and any question as to its title."
 
 N.C. State Hwy. Comm'n v. Nuckles,
 

 271 N.C. 1
 
 , 14,
 
 155 S.E.2d 772
 
 , 784 (1967). During a Section 108 hearing, "the judge ... shall ... hear and determine any and all issues raised by the pleadings other than the issue of damages, including, but not limited to, if controverted, questions of necessary and proper parties, title to the land, interest taken, and area taken." N.C. Gen.Stat. § 136-108 (2015).
 

 [2]
 

 The cancellation provision reads as follows:
 

 CANCELLATION:
 
 If, in Lessee's sole opinion: a) the view of the advertising copy on any Structure becomes obstructed; b) the Property cannot be safely used for the erection, maintenance or operation of any Structure for any reason; c) the value of any Structure is substantially diminished, in the sole judgment of the Lessee, for any reason; d) the Lessee is unable to obtain, maintain or continue to enforce any necessary permit for the erection, use or maintenance of any Structure as originally erected; or, e)
 
 the use of any Structure, as originally erected, is prevented by law or by exercise of any governmental power;
 
 then Lessee may, at its option, either: (i) reduce and abate rent in proportion to the impact or loss that such occurrence has upon the value of Lessee's Structure for so long as such occurrence continues; or, (ii) cancel this Lease and receive a refund of any prepaid rent, prorated as of the date of cancellation.
 

 (emphasis added).
 

 [3]
 

 Plaintiff-DOT contends that its prayer for relief asking that just compensation be determined according to the provisions and procedures of Article 9 went unchallenged. However, the prayer for relief is not an "averment" for which a responsive pleading is required.
 
 See
 
 N.C. Gen.Stat. § 1A-1, Rule 8(d) (2015) ;
 
 Bolton v. Crone,
 

 162 N.C.App. 171
 
 , 174,
 
 589 S.E.2d 915
 
 , 916 (2004) ("Rule 8(d) applies to only material or relevant averments." (citation and quotation marks omitted)); Black's Law Dictionary (10th ed.2014) (defining an "averment" as "[a] positive declaration or affirmation of fact; esp., an assertion or allegation in a pleading....").
 

 [4]
 

 We acknowledge that the case before us is an appeal from an interlocutory order and not an appeal of an order following a "non-jury trial." However, the standard of review for a trial judge's findings of fact and conclusions of law remain the same in our review of an interlocutory order.
 
 See
 

 Webster,
 

 230 N.C.App. at 477
 
 ,
 
 751 S.E.2d at 226
 
 (applying above stated standard of review in appeal of interlocutory order).